THE PEOPLE *ex rel.* Henry B. Miller, Treasurer, etc.

*v.*

E. J. COOPER *et al.*

1. MUNICIPAL TAXATION—*constitutionality of the " city tax act " of April 15, 1873.* The act entitled "An act in regard to the assessment of property, and the levy and collection of taxes by incorporated cities in this State," approved April 15, 1873, known as the "city tax act," is a "local or special law," within the meaning of that clause of the constitution which prohibits to the General Assembly the passing of "any local or special law incorporating cities, towns or villages, or changing or amending the charter of any town, city or village," and is therefore unconstitutional and void.

2. FORMER DECISION. The rulings in *Spring et al. v. The Collector of the City of Olney,* 78 Ill. 101, in so far as they are inconsistent with the

decision in this case holding the "city tax act" to be unconstitutional, are overruled.

3. LOCAL AND SPECIAL LAWS—*in respect to the incorporation of cities, etc. —constitutional prohibition.* Section 20 of article 4 of the constitution of 1870, prohibits the passing of " any local or special law incorporating cities, towns or villages, or changing or amending the charter of any town, city or village." This prohibition is equivalent to a command that general laws alone shall be enacted for the purposes named. Nor is any distinction made between " incorporating " and "changing and amending charters"—whether one or the other, or both, shall be sought to be done, it can not be by a " local or special law," and must be done by a "general law."

4. Under this prohibition, it is not competent for the General Assembly to create or perpetuate by law any dissimilarity in the character of organizations or powers, in municipalities of the same class or grade.

5. This does not, however, imply that there shall be no liberty in the citizens of localities of sufficient population to render it desirable to become incorporated as a city, town or village, to do so or not, as they may elect; or that such municipalities incorporated under special charters prior to the constitution of 1870, may not elect to change their charters for the provisions of the general law.

6. Nor does the prohibition have any application to the character of the ordinances that may be adopted by municipalities properly incorporated, and which are within their unquestioned powers. It merely restricts the *General Assembly* in the enactment of laws for charters or for changing or amending charters, and in nowise affects the municipality in exercising or not exercising the powers with which it is lawfully invested.

7. In considering this prohibition of the constitution, regard must be had to the substance, not to the mere form, given to the enactment, as determining its constitutionality. If the act must necessarily produce a result clearly forbidden by the constitution, it can not be upheld, whatever may be its form or profession.

8. So, if the General Assembly should, by one or many enactments, authorize the incorporation of every city, every town, or every village, with a distinct and dissimilar organization and powers, such enactment or enactments would be within the constitutional prohibition of " local or special legislation," although having the form of general laws.

9. As a consequence, if an act, whatever its profession as to being a general law, must necessarily result in establishing dissimilarity in the powers and modes of different cities in the levy and collection of taxes, then the law conferring these powers and prescribing these modes will be regarded as within the prohibition.

10. A city can not be vested with discretionary power to collect taxes, as provided by either of two laws which provide different officers and prescribe different methods for that purpose.

11. General laws—*defined.* General laws are those which relate to or bind all within the jurisdiction of the law-making power, limited as that power may be in its territorial operation, or by constitutional restraint.

12. A law can not be general, in any correct sense of the term, but must be "local or special," which, by reason of a local option, is repealed, or, what is practically the same thing, has its vitality as a law suspended in one locality where exists a proper subject matter on which to operate, but remains in full force and vigor in another locality of precisely the same kind,—or, in the same locality, is law or not law, as shall suit the changing fancies of the local authority.

13. Statute—*constitutionality—if a part of an act be void, whether the residue may stand.* If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other.

14. But if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall unless sufficient remains to effect the object without the aid of the invalid portion.

15. And if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect, the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected must fall with them.

Appeal from the County Court of Cook county; the Hon. Martin R. M. Wallace, Judge, presiding.

This was an application to the county court of Cook county, at the July term, 1875, in the name of The People, on the relation of Henry B. Miller, county treasurer and *ex officio* collector of taxes, for a judgment against certain real estate in Cook county for delinquent taxes. Objections were interposed by E. J. Cooper and others. Upon the trial below, the court rejected all the evidence offered in the cause, upon the ground that under the law and upon the record, the court had no jurisdiction to try the facts to which the proofs related, or to render any judgment against the real estate mentioned for the taxes charged thereon—so judgment was entered in favor of the objectors, from which the people took this appeal.

The question of the jurisdiction in the court below depends upon the constitutionality of the act of April 15, 1873, known

as the "city tax act," and that is the only question presented in this case.

Mr. T. LYLE DICKEY,* Mr. FRANCIS ADAMS, Mr. M. F. TULEY, Mr. C. H. MORSE, and Mr. ELLIOTT ANTHONY, for the appellants.

Messrs. RICHMOND & CONDEE, and Mr. EDWARD ROBY, for the appellees; Messrs. BENNETT, KRETZINGER & VEEDER, for the appellee The National Life Ins. Co.; Mr. H. B. HURD, for the appellees Maxson *et al.* and Hurd *et al.*; Messrs. SNOWHOOK, JOHNSTON & GRAY, for the appellees Henry Cordes *et al.*; and Mr. WM. HOPKINS, for the appellees Geo. W. Thomas *et al.*

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

Judgment was rendered in this court, and an opinion filed, affirming the judgment of the court below in the present case, in vacation, after the September term, 1875. A petition for rehearing having been presented, supported by an elaborate and able argument, we have again carefully considered the question by which the judgment was controlled, but still feel compelled to adhere to our former conclusion. We have, however, availed of this opportunity to make some changes in the language of our opinion, with the view of more fully and clearly stating the reasons by which we are governed, and the present opinion will, therefore, be substituted for that formerly filed.

When the cases, of which *The People ex rel. Miller* v. *Otis*, 74 Ill. 384, was selected as the representative, were before us, at the January term, 1875, we refrained from considering the objection then urged against the constitutionality of the act of April 15, 1873, known as the "city tax act," because, in our opinion, there were defects in the provisions of the act, which,

---

*This case was originally submitted at the September term, 1875, and finally determined at the September term, 1876, upon an application for a rehearing. Mr. JUSTICE DICKEY, having been of counsel in the cause before he came upon the Bench, took no part in its decision.

aside from any question of its constitutionality, rendered its enforcement impracticable, and we indulged the hope that, in future legislation, all grounds of constitutional objection might be avoided. In this, however, we have been disappointed, for the amendatory act of April 7, 1875, attempts no more than to obviate the objections to the practical enforcement of the act, as indicated in our opinion in the *Otis case,* and we are, hence, now compelled, reluctant as we are to enter upon a question of so much delicacy and importance, either to sustain or to declare inoperative the act, on constitutional grounds.

By one of the clauses of section 22, of article 4 of the present constitution, the General Assembly is prohibited from passing "any local or special law incorporating cities, towns or villages, or changing or amending the charter of any town, city or village."

It is obvious that the prohibition of the enactment of "local or special laws" for these purposes, is equivalent to a command that general laws alone shall be enacted therefor; for the words "local" or "special" are clearly used in contradistinction to the word "general," and there being no power to enact "local or special" laws, there can be no other than "general" laws enacted. It will be observed, too, that no distinction is made between "incorporating" and "changing and amending charters"—whether the one or the other or both shall be sought to be done, it can not be by a "local or special law," and must, therefore, be by a "general law."

"General laws" are said to be "those which relate to or bind all within the jurisdiction of the law making power, limited as that power may be in its territorial operation or by constitutional restraint." Sedgwick on Stat. and Const. Law, p. 30. The number of persons upon whom the law shall have any direct effect, may be very few, by reason of the subject to which it relates, but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides. *People ex rel.* v. *Wright,* 70 Ill. 398.

The evil supposed to exist which led to the adoption of the clause of the constitution under consideration, was dissimilarity

in the provisions of charters of different cities, towns and villages, and while it was not designed, by the mere act of adopting the constitution, to repeal the provisions of existing charters any further than they were in conflict with other provisions of the constitution which became operative without the aid of legislation, it was designed that no city, town or village should thereafter become incorporated, or have its charter changed or amended, except by virtue of a general law. This, we think, is manifest, both from the proceedings of the convention which framed the constitution, and the peculiar language of the constitution itself.

If no city, no town or no village can become incorporated or have its charter changed or amended, save by virtue of the provisions of a general law, operating "equally and uniformly upon all brought within the relations and circumstances for which it provides," it follows that all cities, all towns or all villages becoming incorporated, and all cities, all towns or all villages having their charters changed or amended, must, to the extent of such change or amendment, be brought under the same law. It is not admissible, either by the letter or the spirit of the constitution, that dissimilarity in character of organization or powers, in municipalities of the same class or grade, shall be created or perpetuated by enactments of the General Assembly.

This does not, however, imply, as seems to be supposed, that there shall be no liberty in the citizens of localities possessing sufficient population to render it desirable to become incorporated as a city, town or village, to do so or not, as they may elect; or that cities, towns or villages incorporated under special charters prior to the adoption of the constitution, may not elect to change their charters for the provisions of general laws for incorporating cities, towns or villages.

The legislature might, doubtless, enact a law arbitrarily incorporating municipalities, or changing or amending existing charters, without consulting the wishes of the inhabitants to be affected; or, it might provide a system by which municipalities should become incorporated, or for changing and

amending existing charters, in the discretion and through the agency of those to be affected—only, in either case, the law must be general, to have any effect. But it is solely to what assumes to be a law obligatory upon organized municipalities, that the present discussion has any reference.

Nor does the prohibition of the constitution have any application to the character of the ordinances that may be adopted by municipalities properly incorporated, which are within their unquestioned powers. It restricts only the *General Assembly* in the enactment of laws for charters or for changing or amending charters, and in nowise affects the municipality in exercising or not exercising the powers with which it is lawfully invested.

To this expression of our views with regard to the construction of the clause of the constitution under consideration, we think it necessary but to add, that it is the substance, and not the mere form given to the enactment, which must determine its constitutionality. If the act must necessarily produce a result clearly and unquestionably forbidden by the constitution, it can not be upheld, whatever may be its form or profession. And, therefore, if the General Assembly should, by one or many enactments, authorize the incorporation of every city, every town or every village with a distinct and dissimilar organization and powers, such enactment or enactments would be within the constitutional prohibition of "local or special legislation," although having the form of general laws.

The question, therefore, here, is not merely what kind of a law does the "city tax act" profess to be, but what is the result it must necessarily produce? If it is to establish dissimilarity in the powers and modes of different cities in the levy and collection of taxes, then, in our opinion, since the law conferring these powers and prescribing these modes becomes a part of the charters of the cities, it is forbidden by the constitution, and does not have the force of law.

The General Assembly passed an act, in force July 1, 1872, providing for the incorporation of cities, and that those incorporated before the adoption of the constitution, under special

charters, might change their charters, and adopt its provisions. It is unlimited in its application, and, so far as we have discovered, fully meets the requirements of the constitution. It contains all the provisions essential to a complete municipal charter, including those providing for and prescribing the mode of levying and collecting taxes. By these, it is, among other things, provided that such taxes shall be collected by the same officers and their collection enforced in the manner provided for the collection of State and county taxes. Rev. Stat. 1874, p. 231, art. 8, sec. 2. This act, with the exception of some immaterial amendments, has continued in force, and was embodied in the revision of the laws made by the General Assembly in 1874. The same provision in regard to the collection of municipal taxes is also a part of the general revenue law, in force since July 1, 1872. The "city tax act" provides a different way for the collection of municipal taxes, and that the property shall be assessed and the taxes collected by officers unknown to the general incorporation law and the general revenue law—a city assessor and a city collector.

It does not profess to repeal or take the place of so much of the general incorporation law and general revenue law, but, upon the contrary, it expressly recognizes their continued existence in full force, in this respect, as in others. It provides, in the 22d section, as follows:

"The city council of any city shall have power, at any time, in lieu of the mode herein provided for the assessment and collection of general city taxes, to, by resolution or ordinance, elect to certify to the county clerk the amount or amounts required to be raised by taxation upon the assessment of property for State and county taxes, and collect the taxes for said city, in the manner provided for in the general revenue laws of this State, and in such case to abolish the office of the city assessor and the city collector: *Provided, however*, that nothing in this section contained shall be so construed as to prevent such corporation, at any time thereafter, from providing for the assessment and collection of taxes by ordinance, and in the manner in this act hereinbefore set forth."

The first question that naturally arises is, can both acts, so far as relates to the collection of taxes, be organic municipal law at the same time? We think it is obvious they can not. It would hardly seem to be debatable that it can not, at the same time, be the law that there shall be a city assessor and city collector, and there shall not be a city assessor and city collector; that the city council shall, by ordinance or resolution, certify to the county clerk the amount or amounts required to be raised by taxation upon the assessment of property for State and county purposes, and he shall not do so; or that the taxes shall be collected by a city collector, and they shall, also, at the same time, be collected by the township collectors.

But may a city be vested with a discretionary power to collect taxes as provided by either law? If it may, then the principle authorizes the enactment of laws providing different officers and methods for the assessment and collection of city taxes indefinitely; for either the General Assembly is restricted to a single, uniform law on that subject, applicable to all other municipalities of like class or grade, or it is wholly unrestricted in that respect. If it is unrestricted in that respect, there can be no pretense that it is restricted in the enactment of more than one law upon any other question of municipal power; and if this be so, by the mere multiplication of enactments, or, for that matter, by the simple multiplication of sections in a single act, as many different, dissimilar and discordant systems of municipal government may be authorized as there are cities, towns and villages in the State; but this would produce precisely the same result as "special or local legislation," and if to each enactment there be added an optional clause, authorizing cities, towns or villages to change from the one to the other, as there is in the "city tax act," in the pleasure of the councils, there would be produced even worse results. Under the views before expressed, therefore, it follows that both acts can not stand.

The next question is, if both acts can not stand, which must be held invalid?

As before observed, there is no constitutional objection to the general incorporation law or the general revenue law, so far as we are aware. The general incorporation law was an indispensable enactment to enable cities to become incorporated, and change or amend their charters in conformity with the constitution. The "city tax act," at most, could have but been designed as supplementary or auxiliary to that act, and the quotation we have made clearly shows, by its recognition of the continued existence as valid laws of the other acts, that the General Assembly could not have designed they were to be in anywise imperiled, in this respect, by the "city tax act," and it would, therefore, seem clear that it is the "city tax act," alone, that must give way.

Aside from this, however, whilst fully recognizing that laws depending upon the election of the people whether they shall or shall not be applicable, may be sustained as against the objection that such laws imply an unauthorized delegation of the law making power, we are of opinion that the provision in the "city tax act," authorizing the city council, at any time, to proceed under the general incorporation and general revenue laws, instead of under that act, and, again, under that act instead of under those laws, is, alone, sufficient to condemn the act as a "local or special" law. A law can not be general, in any correct sense of the term, but must be "local or special," which, by reason of the exercise of a local option, is repealed, or (what is practically the same thing) has its vitality as a law suspended, in one locality, where exists a proper subject matter on which to operate, but remains in full force and vigor in another locality of precisely the same kind,—or, in the same locality, is law or not law, as shall suit the changing fancies of the local authority.

We do not regard it of any significance that the act professes to take effect absolutely. It plainly contemplates, when it takes effect, the provisions of the general incorporation law and general revenue law, on the same subject, shall not be enforced. Neither of those acts authorizes any change from their provisions to those of the "city tax act." It is the "city

tax act," alone, which authorizes such change. It professes to confer power to suspend one law and substitute another, and, again, to suspend that substituted and substitute that suspended—and there, alone, is the attempt made to confer such power.

We can not doubt that this feature in the "city tax act" was a controling consideration in inducing its enactment, and one without which it could not have been enacted, because the act itself furnishes complete evidence to this effect. Otherwise, the provisions of the "city tax act" should have been, and we must presume would have been, engrafted, by way of an amendment, upon the general incorporation law. The unconstitutionality of the section conferring the option, therefore, must, of itself, condemn and render nugatory the balance of the act; for the rule is, as stated by Justice COOLEY, in his valuable work on Constitutional Limitations, pp. 178–9: "If a statute attempts to accomplish two or more objects, and is void as to one, it may still be in every respect complete and valid as to the other; but if its purpose is to accomplish a single object only, and some of its provisions are void, the whole must fall, unless sufficient remains to effect the object without the aid of the invalid portion; and if they are so mutually connected with and dependent on each other, as conditions, considerations or compensations for each other, as to warrant the belief that the legislature intended them as a whole, and if all could not be carried into effect the legislature would not pass the residue independently, then, if some parts are unconstitutional, all the provisions which are thus dependent, conditional or connected, must fall with them."

Our conclusion being, that the "city tax act" is unconstitutional, because it is a "local or special law," it follows that the judgment below is right, and must be affirmed.

In *Spring et al.* v. *Olney,* 78 Ill. 101, we sustained this act, against the objections then urged, but the point discussed in the present opinion was not then urged upon our attention; and the pressure of business upon us was such that we did not go beyond the points presented in the briefs, to consider

whether the act might be obnoxious to other objections. So much of the opinion in that case as may be inconsistent with what is here said, is overruled.

The judgment is affirmed.

*Judgment affirmed.*

Mr. Chief Justice Sheldon, dissenting: Admitting the objections to this particular 22d section of the act to be well taken, I am unable to perceive any sufficient reason for pronouncing the whole act to be void. It is a general act, relating to "all incorporated cities in this State," containing a great variety of important general, absolute provisions,—as, among others, defining the various purposes for which taxes may be levied; regulating their imposition; providing for sinking funds for the payment of indebtedness, and their management; forbidding the contracting of any debt, without, at the same time, providing for the levy of a tax to meet its payment; permitting the levy of taxes for any one year to the amount of, and not to exceed, three per cent upon the valuation of property (there being a number of special city charters throughout the State limiting taxation to a less rate); providing that there shall be but one sale in any one year for any general taxes, special taxes or special assessments, etc., etc. This section 22 only provides an alternative mode for the assessment and collection of city taxes by the substitution of a different officer for assessor and collector. It is a quite indifferent circumstance, as bearing upon the important general provisions of the act, what particular officer shall collect the taxes. Striking out this section, leaves a perfect mode of assessing and collecting taxes otherwise provided for in the act, and would have no effect upon other important portions of it, those adverted to being among the number. The other provisions of the act are general, independent, having no alternative or optional feature, but absolute, and may well stand in force, entirely unaffected by the striking out of this particular optional section 22 of the act.