# CASES

# APPELLATE COURTS OF ILLINOIS.

## FIRST DISTRICT—OCTOBER TERM, 1887.

### JAMES J. McGRATH
### v.
### THE CITY OF CHICAGO.

*Municipal Corporations—Taxes—Act of April 15, 1873—Ordinance Under, Void—Chicago Tax Commissioner—Claim for Salary—General Incorporation Law—Re-organization under.*

1. The re-organization of a city under the general incorporation law abrogates its former charter and determines the tenure of all officers under it, except such as are within the saving clause of the general law.

2. The Act of April 15, 1873, in regard to the levy and collection of taxes by incorporated cities, having been declared unconstitutional, the ordinance of the City of Chicago under which a tax commissioner was appointed, and under which he claims to have performed the duties of such office and to be entitled to the salary thereof, was void and incapable of conferring any rights upon him.

[Opinion filed November 9, 1887.]

APPEAL from the Circuit Court of Cook County; the Hon. KIRK HAWES, Judge, presiding.

This was a suit in assumpsit, brought by James J. McGrath against the City of Chicago, to recover the salary which the

(19)

plaintiff claims is due him as city tax commissioner, for five months, from August 1, 1876, to December 31, 1876. The cause was tried before the court, a jury being waived, and such trial resulted in a finding and judgment for the defendant. The facts shown by the evidence are these:

On the 15th day of June, 1874, the Common Council of the City of Chicago passed an ordinance for the election of a city tax commissioner, and defining and prescribing his duties; the first section of said ordinance being as follows:

"Section 1. At the first regular meeting of the Council after the passage of this ordinance, there shall be elected, by the Common Council, a city tax commissioner in and for said city. The commissioner so elected shall hold his office until the second Monday in December, A. D. 1875, or until his successor shall be elected and qualified. On said second Monday in December, and every two years thereafter, there shall be elected by the Common Council a tax commissioner in and for said city. All tax commissioners elected under this ordinance shall hold their office for the term for which elected, and until their successors are elected and qualified. The salary of said tax commissioner shall be fixed in the annual appropriation ordinance or by some ordinance passed during the first quarter of the fiscal year of said city: Provided, however, that nothing contained in this ordinance shall be considered binding on the Common Council in case they should determine to collect the city taxes of any one year under the provisions of the general revenue law of this State."

The second section of the ordinance required the tax commissioner to give an official bond, and the remaining sections prescribed his official duties.

On the 22d day of June, 1874, said Common Council proceeded to the election of a city tax commissioner, and the plaintiff having received a majority of all the votes cast, was declared duly elected, and he thereupon qualified and entered upon the duties of his office. At the same meeting of the Council an ordinance was passed making various appropriations for the fiscal year, commencing April 1, 1874, and ending March 31, 1875, and among these was an appropriation "for

one tax commissioner, $4,000;" and it was provided that the amounts appropriated for the payment of salaries to the respective officers and employes, in said ordinance mentioned, should be paid monthly at the rate per annum of the amounts respectively appropriated, until otherwise lawfully provided.

In pursuance of an election held in the City of Chicago on the 23d day of April, 1875, said city became organized under the General Incorporation Law, and on the 3d day of May, 1875, the said Council passed the following ordinance :

" Whereas, a majority of the votes cast at the election held in the City of Chicago on the 23d day of April, A. D. 1875, were and are for city organization under general law, and by reason of such election the said City of Chicago has become and is organized under such general law, to-wit, an act entitled ' An act to provide for the incorporation of cities and villages,' in force July 1, 1872 ; and,

" Whereas, doubts may exist, in the absence of an ordinance on the subject, as to the powers and duties and the continuance in office of municipal officers, boards, member of municipal boards and employes of the City of Chicago, who were such at the time of the organization of said city under such general law; and,

" Whereas, it is necessary to the public interest and service and the administration of the municipal government that such doubts should not exist; therefore,

" Be it ordained by the City Council of the City of Chicago :

" Section 1.    That all city officers, city boards, members of city boards and employes of the City of Chicago, who were such at the time of the organization of the City of Chicago under an act entitled ' An act to provide for the incorporation of cities and villages,' in force July 1, 1872, shall be and remain such officers, boards, members of boards and employes, until their successors shall be elected or appointed and qualified, and shall have and exercise the same powers and perform the same duties as heretofore and before said organization under the said act, until otherwise provided by law or ordinance.

"Section 2. This ordinance shall take effect and be in force from and after its passage."

On the 9th day of August, 1875, said city passed an ordinance fixing the total amount of all the appropriations for the current fiscal year, and certifying the same to the County Clerk of Cook County. On the 28th day of April, 1876, an ordinance was passed making appropriations for the fiscal year, and among them was an appropriation for the expenses of the tax commissioner's office, including salaries, clerk hire, etc., and it was therein provided that the salaries should be paid at the same rate as during the preceding year. On the 12th day of July, 1876, said Council passed the following resolution:

"Whereas, the Supreme Court has decided the act known as "Bill 300" to be unconstitutional, and even if that decision should be modified or reversed, it is not desirable to attempt the levy and collection of taxes otherwise than by the general law applicable to the entire State; and,

"Whereas, the office of tax commissioner and city assessor, though useless, can not be abolished to take effect before January next, therefore,

"Resolved, That the Mayor be and he is hereby respectfully requested and urged to cause the discharge of the assistants and employes of each of those offices, and to remove the incumbents of the offices themselves, in order that the offices remain vacant until they can be lawfully abolished; the books in possession of the officers to be transferred to the board of public works."

In accordance with the foregoing resolution the Mayor, on the 5th day of August, 1876, transmitted to the plaintiff the following communication:

"CHICAGO, Aug. 5, 1876.

"J. J. McGRATH, Esq., City.

"*Dear Sir:*—In accordance with the resolution passed by the honorable City Council, July 17, 1876, requiring that the books and other public documents in your possession be turned over to the board of public works upon your vacating the office of tax commissioner, I hereby notify you to comply with the provisions of said resolution and to hand over to said board

of public works such public documents and to take a receipt for the same. I shall feel obliged by your complying with this request at once.

" Respectfully,<br>" M. HEATH, Mayor."

On the 26th day of July, 1876, the City Council passed an ordinance, the eighth section of which is as follows:

" Section 8. The offices of city tax assessor and city tax commissioner be and the same are hereby abolished, the same to take effect on the thirty-first day of December, 1876."

There seems to have been no election of tax commissioner subsequent to the election of the plaintiff, June 22, 1874, and the plaintiff claims to have held over in default of an election of his successor. The evidence shows that he refused to turn over the books and documents in his hands in accordance with the foregoing request of the Mayor, but continued to hold them and to attempt to discharge the duties of his office down to December 26, 1876, at which date he delivered the key of the vault containing said books and documents to the city comptroller. It is admitted that the plaintiff's salary was paid down to August 1, 1876, but that nothing was paid him subsequent to that date.

Messrs. H. T. & L. HELM, for appellant.

Mr. CLARENCE A. KNIGHT, for appellee.

BAILEY, J. The act of the General Assembly, entitled " An act in regard to the assessment of property and the levy and collection of taxes by incorporated cities in this State," approved April 15, 1873, and known as " the City Tax Act," provided a mode for the assessment and collection of taxes different from that prescribed by the general revenue laws of the State, and authorized the election or appointment of certain officers to carry out the revenue system thus inaugurated. The last section of the act empowered the City Council, in its discretion, to provide by ordinance for the appointment of a city tax commissioner, to fix the term of his office and the amount of

his salary, and to confer upon him such powers, and to require of him the performance of such duties as such Council might deem necessary and proper.

In pursuance of the powers thus granted, the City Council of the City of Chicago, on the 15th day of June, 1874, passed an ordinance providing for the election by said Council of a city tax commissioner, fixing his term of office, prescribing his powers and duties, and making it the duty of said Council, from time to time, to fix the amount of his salary. Mani-festly the office of tax commissioner thus created was a part of the machinery for carrying out the revenue system created by the act, and that the validity of the office depended upon the validity of the system of which it formed a part.

In People v. Cooper, 83 Ill. 585, said act was declared to be unconstitutional and void, and it follows, unavoidably, as it seems to us, that the ordinance under which the plaintiff was elected to the office of city tax commissioner, and under which he claims to have performed the duties and to be entitled to the salary of such office, was void and incapable of conferring any rights upon him.

It is urged, however, that the plaintiff's election as city tax commissioner may be sustained under the provisions of section 1, chapter 10, of the former charter of the City of Chicago. Tuley's Laws and Ordinances, 476. It is sufficient answer to say, that the City Council, in creating the office, fixing its term and duties, and filling it by the election of the plaintiff, did not assume to act, and did not in fact act, under that section of the charter. By that section it is provided that an officer termed "a commissioner of taxes" should be appointed by the Mayor with the advice and consent of the Council, to hold his office for the term of four years, and to perform the duties imposed upon such officer by said charter. It is clear that the office, though similar in name, was not the same office created by the ordinance of June 22, 1874, and that the plaintiff's election can derive no validity from the provisions of the old charter.

But there is another ground upon which it must be held that the plaintiff was not entitled to hold said office and

McGrath v. City of Chicago.

receive its emoluments during the period for which he is now seeking to recover the salary pertaining to the office. The creation of said office and the plaintiff's election to it, were anterior to the organization of the City of Chicago under the general incorporation law, and by force of said organization, said office was abolished. In People v. Brown, 83 Ill. 95, and Crook v. People, 106 Ill. 237, it was held that the reorganization of a city under the general incorporation law was an abrogation of its former charter, and determined the tenure of all officers under it, except such as were within the saving clause of the general law. The saving clause provided that the officers in office at the time of the organization under the general law, " shall continue to exercise the powers conferred upon like officers in this act until their successors shall be elected and qualified." It is held in the cases above cited, that this proviso must be understood to apply to the officers provided for in the general incorporation law, answering to the same officers under special charters. There is no provision in the general incorporation law for the election or appointment of a city tax commissioner, nor is any officer provided for having powers or duties answering to that of city tax commissioner created by the ordinance in question in this case.

This cause was tried before the court without a jury, and no questions of law were raised at the trial. The only contention now is, that the finding and judgment are contrary to the evidence. We are of the opinion that said finding and judgment may be sustained upon either of the theories above noticed, and the judgment will, accordingly, be affirmed.

*Judgment affirmed.*