THE PEOPLE *ex rel.* C. S. Deneen, State's Attorney,

*v.*

JAMES A. MARTIN.

*Opinion filed March 17, 1899.*

1. STATUTES—*distinction between "general" and "special" laws.* An act general in its terms and uniform in its operation upon all persons and subject matter in like situation is a general law, while one that does not bring within its limits all persons and subject matter in substantially the same situation is a special or local law.

2. SAME—*when law cannot be upheld as to one of its objects though invalid as to the other.* An act cannot be valid as to one of its objects, though void as to the other, where such objects are so mutually connected with each other in meaning, or as conditions, considerations or compensation for each other, that it cannot be presumed the legislature would have provided for one of the objects without making provision for the other.

3. MUNICIPAL CORPORATIONS—*distinction between incorporated towns and towns under township organization.* An incorporated town is given corporate existence at the request or by the consent of its inhabitants and to subserve their interests, while a town under township organization is a civil subdivision of the county created without the consent of the inhabitants, as a political agency of the State and county, to aid in the civil administration of government.

4. SAME—*effect of special acts of 1867 and 1869 on legal status of town of Cicero.* The special acts of 1867 and 1869, which revised the whole law with reference to the legal status of the town of Cicero, operated to terminate its legal existence as a town under township organization, and created a new incorporated town having powers wholly foreign to those of towns under township organization.

5. CONSTITUTIONAL LAW—*the act of 1891, for dividing incorporated towns, is unconstitutional.* The act of 1891, providing for the division of incorporated towns, (Laws of 1891, p. 74,) is in violation of section 10 of article 5 of the constitution, requiring the General Assembly to provide by general law for township organization, and of section 22 of article 4, prohibiting special laws regulating county or township affairs or incorporating cities, towns or villages.

6. SAME—*act of 1891 not general because applicable to all incorporated towns of State.* That the act of 1891 is applicable to all incorporated towns in the State does not make it general, as under its provisions inhabitants of territory lying outside the limits of an incorporated town are not given the right of separate organization as a town which is given to inhabitants of territory having the same area and population lying within such limits.

7. SAME—*act of 1891 cannot be upheld as providing legal method of division.* The act of 1891 being unconstitutional with regard to its provisions for creating new towns out of territory disconnected from the original town, cannot be upheld as legal with respect to the matter of dividing towns, so as to render persons residing in disconnected territory non-residents of the original town.

8. The act of 1891, under which the town of Cicero was attempted to be divided, being inoperative, the incorporated town of Cicero remains intact, and its town offices were not vacated by reason of the incumbents residing within the disconnected territory comprising the proposed new towns of Berwyn, Grant and Oak Park.

APPEAL from the Circuit Court of Cook county; the Hon. FRANK BAKER, Judge, presiding.

C. S. DENEEN, State's Attorney, CHARLES S. CUTTING, and GREEN & PRINGLE, for appellant.

JOHN P. WILSON, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The appellant filed in the circuit court of Cook county an information in the nature of *quo warranto,* upon the relation of the State's attorney for the county of Cook, in which it was alleged the appellee, without legal right or warrant so to do, holds and executes the office of town clerk of the town of Cicero, and praying said appellee be required to answer by what warrant he claims the right to discharge the duties of the said office. A demurrer interposed by the relator to the plea filed by the appellee to the information was overruled. The appellant elected to abide the demurrer, and judgment was entered dismissing the information.

The ultimate question arising upon the record is whether the plea disclosed lawful authority in the appellee to hold the office and discharge the duties of clerk of the said town of Cicero. In substance the averments of the plea were that the county of Cook adopted the system of township organization about the year 1857 and has since maintained the same, and that under such system township 39 north, range 13, east of the third princi-

pal meridian, was organized under the general township organization laws of the State as the town of Cicero; that afterwards, on the 28th day of February, 1867, a special act was adopted by the General Assembly, whereby the inhabitants and residents of the said territory of said town of Cicero were declared a body corporate and politic under the name and style of "The town of Cicero," the boundaries whereof were the same as said town of Cicero under township organization, and that on the 25th day of March, 1869, a further act was passed to revise the charter of the said town of Cicero and giving additional corporate powers to said incorporated town; that on December 1, 1898, in pursuance of an act of the legislature entitled "An act to provide for the division of incorporated towns," approved June 13, 1891, a petition was presented to the county judge of Cook county to disconnect certain territory from the said town of Cicero and to organize the same as the town of Berwyn, and that in further pursuance of the same last mentioned act another petition was afterward presented to the said county judge for the disconnection of certain other described territory of the said town of Cicero and to organize the same as the town of Grant, and also still later another petition for the disconnection of still other territory of the town of Cicero and for the organization of the same as the town of Oak Park was presented to the said county judge; that the questions of the disconnection of the territory mentioned in said petitions, respectively, in pursuance of said act of June 13, 1891, were submitted to the legal voters of the town of Cicero at an election held on the 20th day of December, 1898, and that a majority of the votes cast at said election in said incorporated town of Cicero, as well as the majority of the votes cast in the territory sought to be disconnected by each of said petitions, were in favor of such disconnections, and of each of them, and that said towns of Berwyn, Grant and Oak Park thereby became legally organized towns under the

township organization laws of the State, in pursuance of the provision of said act of 1891; that, as required by said act, the county judge of the said county called an election to be held for the election of one supervisor, one assessor, one town clerk, three highway commissioners, two justices of the peace and two constables in each of the said towns of Berwyn, Grant and Oak Park, at which election one Jacob R. Drent was duly elected to the office of town collector in and for the said town of Berwyn, and that said Drent accepted the said office and qualified as collector of the said town and is acting in that capacity; that said Drent, at the time of the disconnection of that part of the town of Cicero which was so organized as the town of Berwyn, was the duly elected, lawfully qualified and acting town clerk of the said town of Cicero; that he then resided, and has since resided and does now reside, in the said town of Berwyn, and by the disconnection of the said territory composing the town of Berwyn and the organization of that town the said Drent ceased to be a resident of the town of Cicero, and that an order was entered by the trustees of the said town of Cicero, and also by the town authorities of the said town, declaring the office of town clerk of the town of Cicero vacant, for the reason the said Drent, the incumbent of said office, had ceased to be a resident of the said town, and appointing the appellee town clerk of said town of Cicero to fill said vacancy; that appellee accepted the said appointment, and qualified as required by law, and thereby became and was and is the legal incumbent of the said position.

It may be conceded that the acts and proceedings set forth in the plea as having been had and taken for the purpose of disconnecting territory from the incorporated town of Cicero and erecting such territory into corporations known as towns under the township organization system were in full compliance with the provisions of said act of 1891, but our investigation of the subject has

resulted in the conclusion that act is not in harmony with the provisions of the constitution of 1870. As the first step in the process of determining the validity of the act we may ascertain the character of the incorporated town of Cicero. Prior to the year 1867 it was a town under the Township Organization act. In that year an act was adopted by the General Assembly creating the incorporated town of Cicero, and in 1869 that act was revised and provisions added conferring additional powers upon the corporation. It is therefore unnecessary to refer to the first of these laws. The act of 1869 will be found on page 166 of volume 3 of the private laws enacted by the legislature at the session of that year. Its provisions substantially are, that the inhabitants and residents of the town of Cicero are constituted a body politic and corporate, by the name and style of "The town of Cicero;" that the boundaries of the town shall include the territory known as the town of Cicero, in the county of Cook; that the officers of the town shall consist of the same officers provided by law to be elected in a town under township organization, (except highway commissioners,) and also, in addition thereto, four trustees and a police magistrate. The act provides for the election of four trustees of the town, and that the supervisor, assessor and collector shall be *ex officio* trustees, making a board of seven trustees, in whom are vested "the government and corporate powers" of the town; that the town clerk shall be clerk of the board and the supervisor of the town *ex officio* treasurer, with power to receive and hold all moneys belonging to the town "arising from general or special tax, special assessments, fines, penalties, or otherwise;" that the offices of highway commissioners be abolished; that the board of trustees shall have general management and control of the finances and property of the town, and shall have power to pass ordinances to restrain, prohibit, regulate and license gambling, sale of liquor, billiard halls, etc.; to prevent riots, suppress

disorderly houses, control and regulate the streets and public places, abate nuisances, prohibit indecent exhibitions, control the location of houses for the storage of combustible, inflammable and offensive material and substances; to preserve the peace; to punish all who resist the officers; to appoint watchmen and policemen; to provide a place of imprisonment for persons charged with or convicted of violations of the ordinances; to open and lay out streets, build sidewalks, construct sewers and aqueducts, and to levy and collect special assessments to pay for such improvements, and to exercise the power of eminent domain, if necessary, in making such improvements, and other powers which need not be here enumerated. The effect of this act was to confer on the new corporation created by it, the powers possessed by the town of Cicero as a town under the township organization laws as an agency of the general State and county government, and those possessed by incorporated cities and villages as municipal corporations proper for the promotion of the local and private advantage and convenience of its inhabitants. The powers and functions of the town meeting, (except as to the election of officers,) of the board of auditors, the highway commissioners, and many of the powers and functions of the supervisor of the former town of Cicero, were transferred by the act to and vested in the board of trustees of the new corporation. The acts expressly abolished the board of highway commissioners, and the legal effect was to abrogate the town meeting (except as to elections) and the board of auditors of the town, and vested the incorporated town of Cicero with powers wholly foreign to towns under township organization. The acts of 1867 and 1869 revised the whole law with reference to the legal status of the town of Cicero as a town under township organization, and necessarily operated to abrogate such provisions of the general law under which it had been organized as were inconsistent with their provisions. (*Andrews* v. *People,* 75 Ill. 605.) The

town of Cicero, as a town under township organization, was merged in the new corporation created by those enactments, and its existence as a corporate entity thereby terminated. The corporation thereafter existing, covering said territory, was the incorporated town of Cicero, chartered by said enactments.

On the 13th day of June, 1891, the General Assembly adopted an act in force July 1, 1891, entitled "An act to provide for the division of incorporated towns." In substance this act provides that any portion of an incorporated town having an area of not less than one square mile and a resident population of not less than one thousand, and lying upon the border and within the boundary of such incorporated town, might be disconnected from such incorporated town as a separate town, if authorized to be so disconnected by a vote of the electors of the town at an election which the act provided should be called for that purpose, upon presentation to the county judge of the county of a petition asking such an election to be called and suggesting a name for the new organization to be created by the division of the existing town. The provisions of the act applicable in the event such election should result favorably to the proposed disconnection of territory, so far as important to be here considered, are as follows:

"Sec. 1. * * * Thereupon such territory shall become disconnected and wholly separated from such town, both as an incorporated town and as a town under the township organization laws, and shall constitute a duly organized town under the name proposed in the aforesaid petition under the general township organization laws; and the jurisdiction of the corporate authorities of the town from which such territory shall be taken shall continue over such new town until proper township officers of such new town shall be elected and qualified under the provisions of this act; and the county judge shall forthwith call and fix the time and place of an election to elect

town officers, and cause notices thereof to be posted or published, and perform all other acts in reference to such election in like manner, as nearly as may be, as he is required to perform in reference to the election of officers in newly organized cities; but the term of such officers elected at such election shall terminate as soon as their successors are elected and qualified at the regular annual election.

"Sec. 4. Whenever any portion of any incorporated town shall be disconnected from such town and organized as a separate town under the provisions of this act, such new town shall become vested with the title and ownership of all property belonging to such incorporated town lying wholly therein, to be held for the use and benefit of such new town.

"Sec. 5.   *   *   *   Such new town shall be entitled to its proportionate share of all public property according to the amount of taxable property within such new town, and shall be charged therewith in a division of the public property of such dismembered incorporated town, and the original town, as divided, shall be charged with all the public property within its territory and all the public funds in the hands of the corporate authorities, such division to be agreed upon by the same authorities or settled by the court in the same manner and upon the same basis as above provided for in dividing the indebtedness of said dismembered incorporated town.

"Sec. 7. When any portion of an incorporated town is disconnected therefrom under the provisions of this act, and prior to such division proceedings had been instituted for the purpose of improving any streets within such detached portion by special assessment or special tax, then in such case such proceedings may be carried to a finality, whether the whole improvement be within the detached portion or not.   If the whole improvement is to be made within the detached portion then the amount collected by such proceedings shall be paid over to such

new town, to be used by such town for the purpose for which such proceedings were instituted.   If only a part of such improvement is to be made within the detached territory, then such original town may proceed with the same as though such division had not taken place.  When any portion of any incorporated town shall be disconnected under the provisions of this act, then in that case any proceedings instituted for the purpose of taking land for the purpose of opening any street or alley or other public way within the territory so disconnected shall not be arrested or stayed, but the same may proceed to a finality if the new town so elect, and all moneys received from any special assessment or tax levied or assessed for such purpose shall be paid over to the said new town, to be used by it for the purposes for which the same was collected, such proceedings to be continued in the name of said new town with like force and effect as though said territory had not been detached."

If valid and effectual, this act, and the proceedings in pursuance thereof set forth in the plea, operated to create three new corporations, namely: the town of Berwyn, having an area of three and three-fourths square miles; the town of Grant, having an area of three and one-half square miles; and the town of Oak Park, having an area of four and one-half square miles, and each having a population of more than one thousand and each constituting a duly organized town, with all the powers and functions of a town under the general Township Organization law, and also vested with the title and ownership of all property within its limits belonging to the incorporated town from which it was disconnected, with power to hold the same for its use and benefit, and each vested with power to prosecute to a conclusion, in its own name, any proceeding pending in the courts to condemn land for the purpose of opening streets, alleys and public ways, and levy and assess special assessments or special taxes, and expend the same in making the pro-

posed improvement of any street, alley or public way within its territory, and, in connection with the town from which they were taken, each had the power to use and receive the benefit of any sewer, water-works, gas or electric light system owned by the town from which such towns were disconnected, on the same terms, conditions and restrictions that territory and inhabitants of each town had before such dismemberment.

As we do not think these alleged organizations denominated the town of Berwyn, the town of Grant and the town of Oak Park have legal existence as towns under the township organization laws, or otherwise, for the reason it is our view the act of the General Assembly of 1891 is in contravention of provisions of the constitution of 1870 and therefore invalid, we may next devote attention to the character of those corporations called towns under township organization, and to considerations affecting the question of the validity of that act.

A town under the township organization system is a civil subdivision of a county. A county has been well defined as follows: "It is an involuntary political or civil division of the State, created by statute to aid in the administration of government. It is in its very character and purposes public, and a governmental agency or auxiliary rather than a corporation. Whatever of power it possesses or whatever of duty it is required to perform originates in the statute creating it. It is created mainly for the interest, advantage and convenience of the people residing within its territorial boundaries, and the better to enable the government to extend to them the protection to which they are entitled and the more beneficently to exercise over them its powers. All the powers with which the county is entrusted are the powers of the State and all the duties with which they are charged are the duties of the State. If these were not committed to the county they must be conferred on some other governmental agency." (*Askew* v. *Hale County*,

54 Ala. 641.)  The powers and functions of counties are in like effect so defined in 1 Dillon on Mun. Corp. (4th ed.) secs. 23, 25, and in 7 Am. & Eng. Ency. of Law, (2d ed.) p. 903.

A town organized under the township organization laws of the State is, as before said, a political or civil subdivision of a county.  It is created as a subordinate agency to aid in the administration of the general State and local government.  The distinction between such a town and other chartered municipal corporations proper, sometimes denominated towns, is, that a chartered town or village is given corporate existence at the request or by the consent of the inhabitants thereof for the interest, advantage or convenience of the locality and its people, and a town under township organization is created almost exclusively with a view to the policy of the State at large for purposes of political organization and as an agency of the State and county, to aid in the civil administration of affairs pertaining to the general administration of the State and county government, and is imposed upon the territory included within it without consulting the wishes of the inhabitants thereof.  Of this latter class was the town of Cicero prior to the enactments of 1867 and 1869, mentioned in the plea, and it is contended the alleged towns of Berwyn, Grant and Oak Park are also of the same class.  At the time of the passage of the act of 1891 these alleged new organizations could not have been created under the general laws of the State providing for the incorporation of cities and villages, for the reason they were each to be vested with powers not given by that general act to such municipal corporations, and which could be exercised only by civil subdivisions of counties called into existence by the State for the better administration of the State government.  Nor could they have been organized at that time, or at any time since, as towns under the general township organization laws of the State, for the reason they were to be vested with

powers and rights having reference only to the convenience and advantage of those resident therein, and which were in nowise connected with the purpose for which towns under township organization are created, viz., as agencies to aid in the general administration of the State government; and for the further reason that the general township organization laws do not permit the creation of towns under such laws with area of territory as small as that of these alleged corporations. The design of the general Township Organization act is, the territory of towns shall conform to that of townships under government surveys, and hence that each of such towns shall have an area of thirty-six square miles. The provisions of that act for the creation of new towns by the alteration of boundary lines of other towns or the division of existing towns imperatively require the territory of new towns thus created shall each contain at least ten square miles. (Starr & Curtis' Stat. chap. 139, pars. 6, 26, entitled "Township Organization;" *Town of Jefferson* v. *People*, 87 Ill. 503.) Nor was there when said law of 1891 was enacted, nor has there been since, any general law by which corporations such as the alleged towns of Berwyn, Grant and Oak Park could be created unless the act of 1891 can be regarded as a general law. Section 5 of article 10 of the constitution of 1870 requires that "the General Assembly shall provide, by general law, for township organization, under which any county may organize," and section 22 of article 4 of the same constitution prohibits the passage of any local or special law regulating county and township affairs, incorporating cities, towns and villages or changing or amending the charter of any city, town or village. These constitutional provisions are equivalent to a command that general laws alone shall be enacted for the purposes named, (*People* v. *Cooper*, 83 Ill. 585,) and abrogate the power formerly possessed by the General Assembly to legislate upon those subjects by local or special laws. *True* v. *Davis*, 133 Ill. 522.

It is urged the act of 1891 applies to every "incorporated town" in the State; that its provisions bear equally and uniformly upon all such incorporated towns, and affect, in a general and uniform manner, the territory and inhabitants of all such towns, and that under its operation territory may be disconnected in like manner from each and every of said towns, and when disconnected such territory may in all instances be organized into corporations having equal and uniform powers and not dissimilar in any respect. It is therefore insisted said act of 1891 is a general law, within the meaning of the constitution. That act provides that corporations having powers assumed to be possessed by the said towns of Berwyn, Grant and Oak Park may be organized with territorial area of not less than one square mile and a population of not less than one thousand, if such territory had formerly composed a part of an incorporated town and had become disconnected from such town under the provisions of the act. It is manifest the inhabitants of other like areas of territory in the State having the specified population are denied the privileges and advantages granted to these particular localities comprehended within the act of 1891 on the sole ground such territory had not been embraced within the limits of an incorporated town. Nor can other areas of territory not within the limits of incorporated towns, which may hereafter have a like number of inhabitants, avail themselves of the provisions of the act. It has become the settled rule of construction in this State that an act general in its terms and uniform in its operation upon all persons and subject matter in like situation is a general law, and one that does not bring within its limits all persons and subject matter in substantially the same situation and circumstances is a special or local law. (*Cummings* v. *City of Chicago*, 144 Ill. 563; *Lippman* v. *People*, 175 id. 101.) The classification here urged in support of the view the act of 1891 is general rests solely upon the fact the territory of the proposed

new corporations had previously constituted a part of an incorporated town, and by the process of disconnection therefrom had become possessed of, or of an interest in, certain sewers, aqueducts, electric light system, water-works plants, etc.   Such facts might supply the reason for granting to the proposed new organizations powers not possessed by towns under township organization, in order to enable them to carry pending condemnation and special assessment proceedings to a conclusion, and to dispose of or hold and preserve for their own use and benefit, sewers, aqueducts, electric light plants, water-works systems, and other like improvements pertaining to cities and villages made under the laws of the dismembered incorporated town, but they have no potency to warrant the creation of corporations having the powers and functions of towns under the township organization system, in violation of general laws authorizing the formation of such towns.   The ground of the classification bears no relation whatever to the purposes and objects towns under township organization are created to accomplish and subserve, and marks no relative or pertinent distinction in the situation or circumstances of the territory or the inhabitants of such proposed towns and other lawfully organized towns under township organization system.   It furnishes no reason why the inhabitants of these disconnected areas of territory should be granted a peculiar and special right to become organized as towns under the township organization system, and to employ and exercise the powers and functions of such towns, when the like right and privilege is denied to the like number of inhabitants of other equal areas of territory under conditions and circumstances in no material respect dissimilar.   To adopt such classification is but to arbitrarily create a special class of political and civil subdivisions of counties unknown to and unauthorized by the general laws of the State, in contravention of the spirit and letter of the organic law of the State.

We are constrained to regard the provisions of the act of 1891, relied upon to authorize the creation of the alleged towns of Berwyn, Grant and Oak Park, as special legislation and without legal effect, because of the constitutional prohibition against enactments of that character.

Nor can it be urged that the said act of 1891, in so far as it provides for a division of incorporated towns by the disconnection of a portion of the territory thereof, is general in its operation, and that it may lawfully operate to disconnect from the said incorporated town of Cicero the territory proposed to be included within the contemplated new town of Berwyn, and thereby render the said town clerk, Brent, a non-resident of the said incorporated town of Cicero, and to make vacant the office of town clerk, as the result of such proposed division and the alleged non-residence of the incumbent of said office. A statute may be void as to one or more of the objects it was designed to accomplish and still be valid as to another object; but that is never true when the different objects of the enactment are so dependent upon or so mutually connected with each other in meaning, or as conditions, considerations or compensations for each other, that it cannot be presumed the legislature would have enacted the provisions designed to secure one of the objects without the provisions for the others. (*People v. Cooper, supra; Donnersberger v. Prendergast*, 128 Ill. 229; Cooley's Const. Lim. p. 211.) It is not fairly to be imputed to the General Assembly it would have adopted the provision of the enactment providing simply for the disconnection of part of the territory of incorporated towns without at the same time supplying some mode of organization or government for the parts so disconnected.

The act of 1891 being inoperative, the territory of the incorporated town of Cicero remains intact, and the said Jacob R. Drent, town clerk of said town, has not become non-resident of the town by reason of the acts and pro-

178—40

ceedings set forth in the plea of appellee to the information. The alleged election of Drent to the office of collector of the proposed town of Berwyn, and his acceptance of such supposed office, in nowise affected his status as town clerk of the incorporated town of Cicero, for the reason no such organization as the town of Berwyn or such office as collector of that town ever had legal existence. There being no vacancy in the office of clerk of the incorporated town of Cicero, the appellee could not become the incumbent of that office by appointment, as alleged in the plea.

The judgment must be and is reversed and the cause remanded, with directions to sustain the demurrer.

*Reversed and remanded.*