## FORD *v.* DELTA AND PINE LAND COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF MISSISSIPPI.

No. 25. Argued October 16, 19, 1896. — Decided January 4, 1897.

Exemptions from taxation are to be strictly construed, and no claims for them can be sustained unless within the express letter or the necessary scope of the exempting clause; and a general exemption is to be construed as referring only to the property held for the transaction of the business of the party exempted.

The exemption from taxation conferred by the 19th section of the act of the legislature of Mississippi of November 23, 1859, c. 14, upon the railroad company chartered by that act, does not extend to property other than that used in the business of the company, acquired under the authority of a subsequent act of the legislature in which there was no exemption clause.

A clause in a statute exempting property from taxation does not release it from liability for assessments for local improvements.

It has been held in Mississippi not only that special assessments for local improvements do not come within the constitutional limitation as to taxation, but also that the construction and repair of levees are to be regarded as local improvements for which the property specially benefited may be assessed; and this rule is in harmony with that recognized generally elsewhere, to the effect that special assessments for local improvements are not within the purview of either constitutional limitations in respect of taxation, or general exemptions from taxation.

Under authority granted by the act of March 16, 1872, c. 75, of the legislature of Mississippi, the auditor conveyed to the Selma, Marion and Memphis Railroad Company the lands in question here, by deeds which recited that they had been " sold to the State of Mississippi for taxes due to the said State," and that the company had paid into the state treasury two cents per acre " in full of all state and county taxes due thereon to present date." No reference was made in those deeds to levy taxes or assessments. *Held,* that those deeds were no evidence of the prior payment and discharge of such levy taxes and assessments.

It is well settled that the punctuation of a statute is not decisive of its meaning.

The decision of the Supreme Court of Mississippi in *Green* v. *Gibbs,* 151 Mississippi, 592, followed, as it was, by subsequent decisions of that court, is not only binding on this court, but also commends itself to the judgment of this court as a just recognition of the force of legislative contracts.

THIS was a bill in equity filed in the Circuit Court of the United States for the Southern District of Mississippi, on February 27, 1889, by the appellants as complainants to quiet their title to certain lands therein described. Upon final hearing, on August 15, 1890, a decree was entered dismissing the bill, 43 Fed. Rep. 181, from which decree the complainants have appealed to this court.

Complainants' chain of title is as follows: 1st. A patent on March 13, 1853, from the United States to the State of Mississippi, under the act of September 4, 1841, c. 16, 5 U. S. Stat. 453, and September 28, 1850, c. 84, 9 U. S. Stat. 519. 2d. Conveyances from the State of Mississippi made during the years 1853 to 1856, inclusive, to E. F. Potts and others, these grantees having entered the lands with scrip issued by the secretary of state, under the acts of March 15 and March 16, 1852, providing for the construction of levees upon the Mississippi River. Laws Miss. 1852, c. 14, pp. 33, 41. 3d. Deeds from the grantees of the State and their privies in interest, in the years 1871 and 1872, to the Selma, Marion and Memphis Railroad Company, made under the authority of an act of the legislature of the State, approved July 21, 1870, authorizing the conveyance of lands to such company in payment of subscription to its capital stock. Laws Miss. 1870, c. 220, p. 566. 4th. Deeds from the State of Missis-

sippi to the railroad company, of date March 18, 1873, executed under authority of an act of the legislature, approved March 16, 1872, Laws Miss. 1872, c. 75, p. 313, providing that all lands which had been sold to the railroad company, and 'which had become forfeited to the State for non-payment of taxes, might be bought by that company from the State at two cents per acre, upon satisfactory proof that not less than twenty-five miles of the company's road had been built; and also that in all cases in which the lands had been forfeited to or purchased by the levee boards in any of the levee districts in the State and were held and claimed by them for the non-payment of levee taxes the said boards were required to arrange for the payment of such taxes by receiving therefor the bonds of the said districts. 5th. Deeds from the United States marshals for the Northern and Southern Districts of Mississippi to the complainants, executed August 1, 1887, and February 5, 1889, under sales made pursuant to a judgment and decree rendered on July 6, 1886, by the Circuit Court of the United States for the Northern District of Mississippi in the case of *Timpson, Trustee, &c.* v. *Selma, Marion & Memphis Railroad Company.*

The title of the defendant was based upon various statutes of the State of Mississippi, providing for repairing and perfecting the levees of the Mississippi River in certain counties, and making assessments upon all the lands within certain boundaries for the cost of such improvements, and originated in tax sales made for the non-payment of such assessments.

*Mr. Casey Young* for appellants. *Mr. Michael F. McMullen* was with him on his brief.

*Mr. Frank Johnston* for appellee.

Mr. Justice Brewer delivered the opinion of the court.

We premise by saying that this case involves over 200 different tracts of land in nine separate counties, and amounting to 112,160 acres; that the titles to these various tracts as claimed

by complainants are not all deraigned by the same conveyances or subject to the same conditions; that in consequence the many questions discussed ,so elaborately by counsel in their brief and in oral arguments do not affect alike all the tracts. We shall not attempt to consider all the questions presented, but have endeavored to select those which are necessary for a final determination of the case. We believe that the title to every tract falls within the scope of those we shall discuss, and that the propositions laid down are decisive of the rights of the parties hereto.

It is insisted that the lands, while held by the railroad company were, by virtue of certain clauses in its charter, exempt from the levee assessments, and we understood counsel, in their argument at the bar, to state that this question stands in the forefront of the case, and that upon its decision in favor of the complainants their rights depend. The lands were, in the years 1871 and 1872, conveyed by their former owners to the railroad company in payment of stock subscriptions. The company, originally known as the Memphis, Holly Springs and Mobile Railroad Company, was chartered by an act of the legislature of the State, of date November 23, 1859. Laws Miss. 1859, c. 14, p. 51. Sections 19 and 21 of that act are as follows:

" Sec. 19. That the capital stock, and all the property and effects of said company shall be exempt from taxation until said road is completed: *Provided,* said road is commenced within two years and completed within ten years from and after the passage of this act.

" Sec. 21. That said road shall be commenced in three years and completed in twelve years after the passage of this act."

The civil war interfering with the construction of the road, on February 20, 1867, Laws Miss. 1867, c. 464, p. 635, an act was passed reviving the corporation. Section 2 reads: " That said company shall have sixteen years in which to construct the said road, and shall commence the same in three years from and after the passage of this act." Section 3 provides: " That it shall and may be lawful for the said corporators to

receive subscriptions in land to the capital stock of the company: *Provided*, The lands shall be within five miles of the line of said road." On July 21, 1870, Laws Miss. 1870, c. 220, p. 566, a further act was passed, the second section of which is: "That said Selma, Marion and Memphis Railroad Company are hereby authorized to receive, in the way of subscription to the capital stock of said company, lands lying anywhere within the limits of the State of Mississippi." Under the authority of this statute these lands, being all more than five miles from the line of the road, were conveyed to the company. Now, the contention is that section 19 of the original statute was operative to exempt these lands from any charge for levee assessments. It is contended that the general language, "the capital stock and all the property and effects of said company," includes all the property belonging to the railroad company, whether used for railroad purposes or not; that it includes not only all the property which it acquired under the authority of its original charter, but also all property which it acquired under the authority of the amendment of July 21, 1870; and, finally, that the exemption from taxation means not merely exemption from all taxes levied for ordinary purposes by State, county or city, but also all assessments for local improvements. These propositions are denied by the defendant, and certainly present the most important if not the vital questions in the case.

It is abundantly established by the decisions of this as of other courts that exemptions from taxation are to be strictly construed, and that no claim of exemption can be sustained unless within the express letter or the necessary scope of the exempting clause. *Vicksburg &c. Railroad* v. *Dennis*, 116 U. S. 665, 668; *Chicago &c. Railroad* v. *Guffey*, 120 U. S. 569; *Yazoo &c. Railroad* v. *Thomas*, 132 U. S. 174; *Yazoo &c. Railroad* v. *Delta Commissioners*, 132 U. S. 190; *N. O. & Lake Railroad* v. *New Orleans*, 143 U. S. 192; *Schurz* v. *Cook*, 148 U. S. 397, 409; *Keokuk &c. Railroad* v. *Missouri*, 152 U. S. 301, 306; *Winona &c. Land Company* v. *Minnesota*, 159 U. S. 526.

Indeed, there has been strong judicial dissent from the doctrine of the power of the state legislature to create a permanent

exemption from taxation.    *Washington University* v. *Rouse,* 8 Wall. 439, 443.

It has been frequently decided that a general exemption of the property of a corporation from taxation is to be construed as referring only to the property held for the transaction of the business of the company.    *Ramsey County* v. *Chicago, Milwaukee &c. Railway,* 33 Minnesota, 537; *Todd County* v. *St. Paul, Minneapolis &c. Railway,* 38 Minnesota, 163; *Illinois Central Railroad* v. *Irvin,* 72 Illinois, 452; *In re Swigert,* 119 Illinois, 83; *State* v. *Mansfield Commissioners,* 23 N. J. Law, 510; *State* v. *Newark,* 25 N. J. Law, 315; *Vermont Central Railroad* v. *Burlington,* 28 Vermont, 193; *Railroad Company* v. *Berks County,* 6 Penn. St. 70; *Worcester* v. *Western Railroad,* 4 Met. 564; *Tucker* v. *Ferguson,* 22 Wall. 527; *Bank* v. *Tennessee,* 104 U. S. 493, 497.    In this latter case, after referring to several of the authorities just cited, it was said: " The doctrine declared in them, that the exemption in cases like the one in the charter before us extends only to the property necessary for the business of the company, is founded in the wisest reasons of public policy.    It would lead to infinite mischief if a corporation, simply by investing its funds in property not required for the purpose of its creation, could extend its immunity from taxation, and thus escape the common burden of government."

The rule in Mississippi is the same.    *McCulloch* v. *Stone,* 64 Mississippi, 378.    In that case a railroad company, as here, was authorized to take subscriptions to its capital stock, payable in land.    The charter also provided " that all taxes to which said company shall be subject for the period of thirty years are hereby appropriated and set apart, and shall be applied to the payment of the debts and liabilities which the said company may have incurred in the construction of said road or for money borrowed,  .  .  .  and it shall be the duty of the tax collector in every county, in each and every year, to give to said company a receipt in full for the amount of said taxes upon receiving from the company an affidavit made by the president or cashier of said company that the amount of said taxes have actually been paid and applied by said company during the

year in payment of the debts, . . . which receipt so given shall be in full of all taxes — county, state and municipal — to which said company shall be subject." Construing this provision, the Supreme Court held that outside lands (that is, lands not used in the business of the company) were not within the exemption, saying, on page 394:

"The business of a railroad company, the property and instrumentalities ordinarily owned and employed by them, it must be assumed, are well known to the legislative department, and it must also be assumed that the language employed was used in reference to such business and property, unless a contrary intention is shown. 'All taxes to which said company shall be subject' must, therefore, we think, be construed to include only the taxes due upon the property of the company necessary to the construction, equipment, maintenance and operation of its road. Many of the authorities upon the question here involved are collected in Cooley on Taxation, 146 to 153. From them we can deduce no principle of construction which would include in the exemption granted an exemption of the outlying lands owned by the company. The lands involved in this suit have no sort of connection with the business of the company; they are owned by it only as the same character of lands would be owned by a private individual, and for the same purposes; they were bought, not to enable the company to perform any duty it owes to the public, but that it might by dealing in them make a profit as a buyer and seller; in this character we find nothing in the words or spirit of the exemption clause giving immunity from taxation."

Within the scope of these decisions it is, to say the least, not clear that the general language in section 19 is to be construed as referring to property other than that necessary for the business of the railroad company.

But passing that, it is clear that even if the exemption is properly construed as applying not only to the property necessary for the business of the railroad company but also to all other property which by the terms of its charter it was at liberty to acquire, it does not extend to property which, not necessary for its business, it acquired under the authority of a

subsequent act of the legislature, in which is found no exemption clause. The act of 1867, reviving the charter, authorized the corporation to receive payment of subscriptions to its capital stock in lands, provided the lands were within five miles of the line of its road; and if the exempting clause can be construed to apply to property other than that used in the business of the company it would be limited to property which by the charter, as it then stood, it was authorized to acquire. Subsequently thereto, and in 1870, it was authorized to receive in the way of subscription to its capital stock lands lying anywhere within the limits of the State, and it was under this authority that it took title to the lands in question. Now, in this act of 1870 is no mention of any exemption, nothing to suggest that the legislature intended that this roving authority to take title to lands carried with it the right to withdraw all the lands thus taken from the burdens of taxation, and it would be clearly in violation of the accepted rule of construction in respect to contracts of exemption to extend the provisions of the exempting clause in the acts of 1859 and 1867 to property, the right to acquire which was conferred solely by the subsequent act.

Again, it is insisted that section 19 of the act of 1859, which was not changed in any subsequent statute, made the exemption conditional upon the fact that the road was commenced within two years and completed within ten years; that, as a matter of fact, this condition was not complied with, and hence, that the exemption failed entirely. The argument is that all tax levies and sales of these lands were only conditionally invalid, and that, the condition failing, the tax sales became operative and the title passed. On the other hand, it is said that this condition was a condition subsequent; that during the time prescribed in the condition the lands were exempt from taxation, even though after that time proceedings might be instituted under special warrant of the legislature for the assessment and collection of taxes thereon, and hence, that all proceedings instituted and carried through during the pendency of such time of exemption were absolutely void. We do not deem it necessary to decide this

question, and only refer to it as suggesting equitable consid-
erations against any expansion of the claimed exemption.

But, further and chiefly, the only exemption was from
taxation, and it is a general rule of construction that a clause
exempting from taxation does not release the property so
·exempted from liability for assessments for local improve-
ments. *Sheehan Jr.* v. *The Good Samaritan Hospital*, 50
Missouri, 155; *Buffalo City Cemetery* v. *Buffalo*, 46 N. Y.
506; *Paterson* v. *Society for establishing Useful Manufact-
ures*, 24 N. J. Law, 385; *State* v. *Newark*, 35 N. J. Law, 157.
This question was considered in this court in *Illinois Central
Railroad* v. *Decatur*, 147 U. S. 190. The exemption in that
case was "from all taxes under the laws of this State,"
(Illinois) and it was held that that clause did not relieve the
property from the burden of special assessments imposed to
pay the cost of local improvements. The question was dis-
cussed at some length and the various authorities reviewed in
the opinion then delivered.

That is also the settled law of the State of Mississippi.
*Daily* v. *Swope*, 47 Mississippi, 367; *Vasser* v. *George*, Id. 713;
*Macon* v. *Patty*, 57 Mississippi, 378. In the first two of
these cases it was held, not only that special assessments for
local improvements did not come within the constitutional
limitations as to taxation, but also that the construction and
repair of levees were to be regarded as local improvements
for which the property specially benefited might be assessed.
We quote from *Vasser* v. *George*, page 721:

"We are content to refer to our views on this subject, just
delivered in *Daily* v. *Swope*. In that case we reached the
conclusion that local assessments for local improvements were
not embraced in the twentieth section of the twelfth article
[said section reading 'taxation shall be equal and uniform
throughout the State. All property shall be taxed in pro-
portion to its value, to be ascertained as directed by law,']
but were referable to the general power of taxation, which
was supreme, unless restrained by the Constitution of the
United States, or of the State. The limitation upon the power
in that section only applies and governs taxes levied for the

usual, ordinary and general purposes of the state, county and incorporated city or town, and does not include special assessments for local public objects for the purpose of ameliorating property and enhancing its value, and also contributing to the general convenience, health or welfare of the community.    That, in apportioning such assessments, the legislature or local taxing body may levy·them on the basis of special benefits received, because of the improvement made.    And, further, may adopt that mode which, in its discretion, seems equitable and just, either by specific taxes or according to value, or in the instance of a very small locality, as a street or square in a city, either the area of the lots, the front measurement or value may be selected.    So, too, in the levee district, composed of several counties and parts of counties, lands in the river counties, which are supposed to receive the largest benefit, may be assessed higher than those more remote.    The legislature may classify the lands and tax accordingly."

That such is now the settled law in Mississippi is not denied by counsel for complainants, but it is insisted that these decisions were subsequent to the vesting of title to those lands in the railroad company; that at that time the rule of decision in the State was different, and that the rights of the railroad company were created and vested under the rule as then announced, and also that no subsequent change in decision could disturb the rights created in reliance upon the previous rule.    In support of this they refer to *Southern Railroad Company* v. *Jackson*, 38 Mississippi, 334, but that case does not sustain their contention.    In it the railroad company claimed under a statute, providing " that the stock, fixtures and property of said company shall be exempt from taxation," but the taxes which were held included within the exemption were the general taxes of the city for corporate purposes.    There was no special assessment for local improvements on property benefited thereby, but simply the ordinary taxes levied for corporate purposes, including, it is true, among them matters of public improvement.    Such taxes come strictly within the provisions in respect to taxation.

A city is a municipal corporation, a political subdivision of the State, charged with certain specified duties of government within its territorial limits, and for the full discharge of those duties it is authorized to levy taxes. In this respect it does not differ from a county, and although some of the funds derived from a city tax may have been used for public improvement, that does not change the character of the tax. It does not cease to be a tax properly so called, any more than would a tax levied by the State if a portion of the funds raised thereby were invested in the building of a capitol, or any other public improvement. This is the only decision of the Supreme Court of the State to which our attention is directed as enunciating a doctrine different from that laid down in the cases in 47 and 57 Mississippi, *supra.* The rule therefore established in Mississippi is in harmony with that recognized generally elsewhere, to the effect that special assessments for local improvements are not within the purview of either constitutional limitations in respect to taxation or general exemptions from taxation. It follows, therefore, that the exemption in this charter in no manner released the property from the burden of the special assessments for the construction and repair of the levees.

These special assessments for levee improvements culminated in sales and deeds under express authority of the statutes of the State, and by them a perfect title was transferred, which finally passed to the defendant. No defects are pointed out by the complainants in these proceedings — at least, none which go so far as to vitiate those proceedings if the property was subject to such assessments. This conclusion disposes of the principal question in this case.

We may, however, go further and consider some other matters in reference to these assessments. On March 16, 1872, the legislature passed an act to facilitate the construction of the railroad, Laws Miss. 1872, c. 75, p. 313, section 3 of which reads:

"That all lands which have heretofore been purchased by or forfeited to the State of Mississippi, for taxes due and unpaid thereon, and which have been sold to said Selma, Marion and Memphis Railroad Company by the original owners of the

same, shall be sold to said railroad company by the auditor of public accounts, at two cents per acre, upon the presentation of satisfactory evidence of titles to said railroad company, from said original owners, and satisfactory proof that not less than twenty-five miles of said road have been constructed : *Provided*, The title to the lands shall have been conveyed by said owners to said company, prior to the passage of this act, and that in all cases where the said lands have been forfeited to or purchased by any of the levee boards in the levee districts in this State, in which any of the said lands lie, and are now held or claimed by any of the said levee boards for the non-payment of the levee taxes, and where the title is held by said railroad company, said levee boards are hereby required to arrange for the payment of said taxes by receiving in payment of the same, any of the bonds of the levee boards : *Provided*, That if the said Selma, Marion and Memphis railroad shall receive the $4000.00 subsidy per mile, the said railroad shall pay into the state treasury one and one half of one per cent on the gross earnings of said road, for every mile of said road in this State, beginning two years after they receive the first subsidy : *Provided further*, That this tax shall only be levied until said railroad company shall be required to pay tax on its property."

Under the authority of this statute the auditor conveyed these lands to the company by deeds which recited that the lands had been " sold to the State of Mississippi for taxes due the said State," and that the company had paid into the state treasury two cents per acre " in full of all state and county taxes due thereon to the present date." No reference was made in these deeds to the levee taxes; no recital of any payment of them, or of any adjustments with the levee commissioners. Complainants contend that the deeds are themselves evidence of a prior payment and discharge of the levee taxes, on the theory that such payment was a statutory prerequisite to the conveyance by the auditor. *Nofire* v. *United States*, 164 U. S. 657. We do not so understand the force of the statute. The transactions with the auditor and with the levee board were independent of each other. The auditor sold and

conveyed at two cents an acre for all state and county taxes, *i.e.*, all taxes which the State had full authority over, and which it could compromise at any sum. The levee board held the lands in trust and the company was required to pay all levee taxes in full, either in cash or in levee bonds, the obligations for which the lands were held. The two tribunals acted separately. Neither's action was conditioned upon that of the other. And proof of the action of one is no evidence of the action of the other.

It is true that the punctuation of the statute gives plausibility to a different construction, but it is well settled that punctuation is not decisive. A colon after the word "act" in the first proviso would have made the meaning more apparent. A proviso is not always a condition, much less a condition precedent. As, for instance, the last two provisos in this section. There is no evidence in the record of the payment of the levee taxes by the railroad company, or any one for it, or for the complainants. On the other hand, it does affirmatively appear that the title held by the levee board to these lands has passed to the defendant. In order to a clear understanding of this, reference must be had to the legislation of the State in respect to levee construction and repair.

The levee system was inaugurated prior to the civil war, and some work was done thereon and some debts contracted thereby. On February 13, 1867, Laws Miss. 1867, p. 237, an act was passed creating a board of commissioners, consisting of three persons, for the liquidation of all outstanding liabilities incurred for levee purposes, providing for the issue of bonds in satisfaction of such liabilities, and an annual assessment of five cents an acre on certain lands and three cents per acre on certain other lands supposed to be benefited by the construction of the levees; and directing that the fund thereby created, whether in money or land, should be devoted to the payment of such bonds. All the lands in controversy were sold under the authority of this statute for delinquent levee taxes, and purchased by the levee board, and were so held at the time of the conveyances to the railroad company. Thereafter and in 1877 Josiah Green, the holder of $85,000 of the

levee bonds, filed a bill in the chancery court of Hinds County, in behalf of himself and all other holders of said bonds, against the state auditor and state treasurer (who had been by statute substituted for the levee board) to subject these lands to the satisfaction of such indebtedness. On appeal to the Supreme Court of the State it was held, *Gibbs* v. *Green*, 54 Mississippi, 592, that the act of February 13, 1867, was a legislative proposition to the holders of claims against the original levee board, which, when accepted by such claimants, created a contract beyond the power of the State to disturb, and that under that contract the taxes received and the lands sold for non-payment of taxes became a trust fund, which could not be diverted by any subsequent act of the legislature. In pursuance of that decision a decree was finally entered, ordering a sale of all such lands so conveyed to the levee board for non-payment of delinquent levee taxes in satisfaction of the claims of these bondholders. These lands were sold under that decree and the title acquired thereby passed by subsequent mesne conveyances to the defendant. It is insisted by the complainants that as the railroad company was not a party to these proceedings, they do not conclude its rights; that they were, as to it, and parties holding under it, *res inter alios acta.* Be that as it may, this decision, followed as it was by subsequent decisions of the Supreme Court, is a construction of the act of 1867 which is not only binding upon this court but also commends itself to our judgment as a just recognition of the force of legislative contracts. Inasmuch as we have seen the auditor's deeds are not to be taken as an adjudication that such levee taxes had been paid by the railroad company, and as it was, under the true construction of the statute of 1867, the intent of the legislature that in addition to the two per cent for general taxes all 'levee assessments should be paid and discharged by the railroad company, and as there is no evidence before us that such payment and discharge was made, it follows that all the title acquired by the levee board, under the act of 1867, has passed to the defendant.

The examination we have thus made of the tax questions in this case renders unnecessary any inquiry into the validity

of the judicial sales by which the complainants claim to have acquired the title of the railroad company, for by those sales, if they took anything, they took no more than the railroad company had, and whatever title it may ever have had was, as we have seen, divested by the tax proceedings.

The decree of the Circuit Court was right, and it is

*Affirmed.*