Laclede Steel Company et al., Appellees, v. The Hecker-Moon Company et al., Appellants.

Gen. No. 8,838.

Opinion filed January 14, 1935. Rehearing denied April 2, 1935.

HAROLD W. RUDOLPH and DOYLE, SAMPSON & GIFFIN, of Springfield, for appellants; EVAN HOWELL, of Springfield, of counsel.

BROWN, HAY & STEPHENS, COY N. OVERAKER, HOFF & HOFF, A. M. FITZGERALD, HARRY C. MOORE and BARBER & BARBER, all of Springfield, for appellees.

MR. JUSTICE DAVIS delivered the opinion of the court.

Appellees filed their bill of complaint in the circuit court of Sangamon county, on October 25, 1933, alleging that on or about September 29, 1932, the City of Springfield, organized and existing under the general Cities and Villages Act, Cahill's St. ch. 24, ¶ 1 et seq., entered into a written contract with the Hecker-Moon Company, an Ohio corporation doing business in Illinois, whereby said corporation agreed to construct and build for said city, in accordance with plans and specifications therefor and also in accordance with the price specified in the bid of said corporation, a bridge known as Fox Road Bridge No. 1, and to furnish and pay for all labor and material used in the performance of said contract; and to secure such performance by said Hecker-Moon Company the Seaboard Surety Company, a New York corporation doing business in Illinois, joined with said Hecker-Moon Company in executing a written bond in the penal sum of $215,000 in

favor of said city, for its use and for the use and benefit of all persons or corporations who should furnish labor or materials to the said Hecker-Moon Company for use in the performance of said contract; and in and by said bond jointly and severally agreed to pay in full all persons or corporations who should furnish the said Hecker-Moon Company labor or materials under any agreement, sale or employment for use in the performance of said contract for the construction of said bridge; all as more fully appears from a true copy of said contract, bid, specifications and bond filed herewith, marked Exhibit "A," and by reference made a part hereof.

That in order to perform said contract for the construction of said bridge the Hecker-Moon Company ordered from the Laclede Steel Company, one of the complainants, and the latter furnished and delivered to said Hecker-Moon Company for use in such construction, a large amount of steel and other building materials to be paid for at the prices shown by itemized statement thereof marked Exhibit "B," hereto attached as a part hereof, and that the net amount therefor is the sum of $8,150.22, together with interest and attorney's fees.

Then follow 13 separate paragraphs, in each of which is stated the name of one of the remaining complainants and containing similar allegations together with an allegation of the net amount due such complainant. The bill further alleges that said claims arise out of the same transaction relating to the furnishing of labor or materials to said Hecker-Moon Company for use in the performance of said contract for the construction and completion of said bridge, and involve the same facts and questions of law; that the liability of the defendant, the Seaboard Surety Company, to the complainants and each of them arises out of and by virtue of the same written bond and any

alleged defense by said defendant to liability on said bond to the complainants or any of them would be the same as to each of said complainants, and involve the same facts and questions of law; that the complainants have a community of rights and interests in the questions at issue and the remedies available therefor, and unless all of said claims of the complainants are determined in this proceeding the complainants will be obligated to institute and prosecute a multiplicity of suits at a great expense to themselves and inconvenience to the court.

That the Hecker-Moon Company and said Seaboard Surety Company have wholly failed to pay said sums owing to complainants respectively, or any part thereof; that the Hecker-Moon Company, after performing approximately two-thirds of the work of completing said bridge, abandoned the work thereon, but the cost of completing said bridge and making good all defaults of said contractor on its obligations incurred in the performance of said contract, including the payment of the several sums so owing to these complainants, is much less than the amount of said bond.

Complainants named the Hecker-Moon Company and the Seaboard Surety Company as defendants, and prayed for an accounting and that the defendants be decreed to pay severally to the complainants whatever sums appeared to be due the complainants respectively with costs.

The bond referred to and a copy of which was attached to the bill of complaint was executed by the Hecker-Moon Company as principal and Seaboard Surety Company as surety acknowledging themselves to be held and firmly bound unto the City of Springfield, Illinois, a municipal corporation, in the penal sum of $215,000, for the use and benefit of all persons or corporations who furnish labor or material to the Hecker-Moon Company for use in the performance of

a contract entered into between said Hecker-Moon Company and said city providing for the construction of certain bridges and their appurtenances known as Fox Road Bridges, Nos. 1 and 2.

The condition of the obligation was such that,

If said principal shall fully complete and satisfy and perform all of its obligations under said contract and all extensions, alterations and variations of said contract;

And if said principal shall satisfy all valid claims and demands for injuries or damages caused in the performance of said contract;

And if said principal shall pay in full all persons and corporations who have furnished said principal labor or materials under any nature of agreement, sale or employment for use in performance of said contract;

And if said principal shall fully indemnify and protect said obligee against all liability or expense suffered or incurred by said obligee by reason of any claim or claims of patent infringement;

And if said principal shall indemnify and protect said obligee from all damage or expense whatsoever which said obligee may suffer by reason of the failure of said principal to fully perform all its obligations under said contract;

And if said principal shall fully reimburse and repay said obligee all outlay and expense whatsoever which said obligee may incur in making good any default of said principal;

And if said principal shall reimburse and repay said obligee all outlay and expense, including attorney's fees, necessarily paid or incurred by obligee in enforcing performance of any of the obligations of said principal under said contract, or under this bond; then this obligation shall be null and void, otherwise, it shall remain in full force and effect.

No alterations which may be made in the terms of the contract or in the work to be done under it, nor the giving by the obligee of any extension of time for the performance of the contract, nor any other forbearance on the part of either the obligee or the principal to the other, nor any other action of the obligee, shall be held to have released said surety from its obligations hereunder, except to the extent that the principal itself is released. Notice to said surety of the acceptance of this bond by the obligee and notice of any such alteration, extension or forbearance and notice of default of the principal is hereby waived. The premium charged by said surety for this bond is included in the contract price and in that manner paid by said obligee, and the rule that guaranties shall be construed in favor of the surety shall not apply to this instrument.

The rights hereunder of persons or corporations furnishing labor or material to said principal for use in performance of said contract may be enforced by bill in equity, but all such rights shall be subordinate to the prior rights of said obligee to full indemnity and reimbursement as above provided.

The defendants were duly served with summons and an order was entered granting them leave to answer by November 20, 1933. Before a hearing on a demurrer by defendants to the bill of complaint six corporations and an individual filed petitions and were permitted to intervene and become parties complainants to said bill of complaint.

The grounds of the demurrer as set forth in the amended demurrer of the defendants, so far as material to the questions raised on this appeal, are that the bill shows upon its face that a court of equity has no jurisdiction thereof and that it is bad for multifariousness, and that from the allegations of the bill it fails to appear that complainants filed any verified notice of claim with the City of Springfield, or any bureau or

department thereof, or in any manner complied with the provisions of an Act of the General Assembly of the State of Illinois, entitled "An Act in relation to bonds of contractors entering into contracts for public construction," approved June 20, 1931. Cahill's St. 1933, ch. 127, ¶¶ 71, 72.

The court overruled the demurrer and defendants excepted to the action of the court. The court thereupon ruled defendants to answer the bill of complaint. Defendants refused to answer further and elected to abide by their demurrer to said bill, and thereupon it was ordered that the bill be taken as confessed and a decree *pro confesso* was rendered by the court ordering and directing that the complainants respectively recover from the defendants the amounts due them respectively with interest from date of the decree but that each of said complainants have but one satisfaction of the amount of such decree in favor of such complainant.

Appellants jointly and severally excepted to said decree and prayed an appeal, and it was ordered by the court upon an appeal bond being filed in the sum of $35,000 it operate as a supersedeas; a joint and several notice of appeal was filed by appellants, and the bond of the Seaboard Surety Company in the penal sum of $35,000 was filed and approved, and said appeal operated as a supersedeas as to said defendant.

Appellants are here seeking a reversal of said decree, and the errors pointed out and argued by them are that the bill is bad because it is multifarious and that it also fails to show that the complainants complied with the statute relating to bonds of public contractors.

In determining the question as to whether a demurrer should be sustained to a bill in chancery on the ground that the bill is multifarious, our Supreme Court said: "It is impossible to lay down any rule universally applicable and controlling on this question

or to say with certainty what constitutes multifarious-ness as an abstract proposition, under the authorities; that there is no settled and inflexible rule; that the modern tendency of the courts is to relax the rigid rules of pleading and to hold that a bill is not multi-farious where causes set forth in the bill may more conveniently be tried in a single suit, where it will avoid a multiplicity of suits, and where the relief sought in each cause is of the same general character and no unreasonable hardship will be caused the par-ties against whom the relief is asked.'' *Abbott v. Loving,* 303 Ill. 154, 162.

A court of equity will, in a single suit, take cog-nizance of a controversy, determine the rights of all parties, and grant the relief requisite to meet the ends of justice, in order to prevent a multiplicity of suits, where a number of persons have separate and in-dividual claims and rights of action against the same party, but all arise from some common cause, are gov-erned by the same legal rule, and involve similar facts, and the whole matter may be settled in one action, brought by all these persons uniting as co-complain-ants. Fletcher's Equity Pleading and Practice, sec. 109.

''A bill is not necessarily rendered multifarious by reason of the fact that there may be united in it several causes of action. If all of the different causes of action united in the bill grow out of the same transaction, and if all the defendants are interested in the same rights and the relief against each is of the same general char-acter, the bill may be maintained. No bill is multi-farious that presents a common point of litigation, the decision of which will affect the whole subject matter and will settle the rights of all the parties to the suit.'' *Abbott v. Loving, supra; Regan v. Grady,* 343 Ill. 423.

We are unable to see that any unreasonable hard-ship will be caused the defendants, and none is sug-

gested, and as the causes set forth in the bill may more conveniently be tried in a single suit and thus avoid a multiplicity of suits, and the relief sought being of the same general character and varying only as to the amount due to each individual complainant, we are of opinion that the bill is not multifarious and the court did not err in so holding.

It is further claimed by appellants that unless restricted by the terms of the statute the words "political subdivision of the state" mean and include cities and other municipal corporations thereof, and that this is the universal rule as conclusively shown by the authorities.

Thus in 43 Corpus Juris, 70: Art. "Municipal Corporations," sec. 5, it is said that: "In their public and governmental aspect municipal corporations are referred to as political subdivisions of the state." In *Ford v. Delta & Pine Land Co.,* 164 U. S. 662, 672, 41 L. Ed. 590, it is said that: "A city is a municipal corporation, a political subdivision of the state, charged with certain specified duties of government within its territorial limits, and for the full discharge of those duties it is authorized to levy taxes." In *Jefferson City Gas-Light Co. v. Clark,* 95 U. S. 644, 654, 24 L. Ed. 521, it is said: "A city is only a political subdivision of the state made for the convenient administration of the government."

They contend that the City of Springfield is a political subdivision of the State within the meaning of this act, and appellees not having alleged in the bill a compliance with the provisions of the act, on the part of such appellees, that the court should have sustained the demurrer to the bill because it failed to state a cause of action.

Appellees admit that no attempt was made to comply with the provision of the act, and that the legislature did not intend to make the act applicable to cities or

to include them within the words "political subdivision" of the State.

In support of such position appellees call attention to the language in sec. 2 of the act, Cahill's St. ch. 127, ¶ 72: "Provided, however, that any person having a claim for labor, and material as aforesaid shall have no such right of action unless he shall have filed a verified notice of said claim with the officer, board, bureau or department awarding the contract, within sixty days, etc.," and say that there is no officer, board, etc., having the power to award contracts except the city council, and that if the legislature had intended to include a city it is only reasonable to assume that it would have so worded the place of filing the notice as to clearly specify a place or person in the city government with whom it would be possible to file the notice.

That a city is not a "political subdivision" of the State; that a "political subdivision" of the State must be a unit which together with all other units of the same kind will constitute the whole State; that "subdivide" means to divide into smaller parts the same being or subject matter, citing the case of *Kansas City v. Neal,* 122 Mo. 232, 26 S. W. 695; that the State of Illinois has made certain divisions of the State into smaller parts, such as counties and counties into townships, all of which if put together will constitute geographically the whole State.

Appellees further say that under Illinois decisions only those governmental units which have been imposed upon a territory by the constitution, or legislature without the consent of the inhabitants should be deemed political subdivisions of the State, and cite the cases of *People v. Martin,* 178 Ill. 611; *County of Cook v. City of Chicago,* 311 Ill. 234.

We are of opinion that a city organized and existing under the general Cities and Villages Act is a political subdivision of the State within the meaning of this

act, it being one of the divisions formed for the exercise of political power within the State, and authorized under its charter to make contracts for public works within its jurisdiction, and to hold otherwise would be to exclude from the operation of this statute many governmental bodies within the State which are so authorized to contract. It could not have been the intention of the legislature, by the use of the words "political subdivision of the State," to limit the application of the act to counties and townships, when there are many cities in the State that are authorized to and do enter into contracts for public works involving the expenditure of large sums of money to which there is the same or greater reason and necessity for the application of the act as there is to counties and towns.

Appellees also say that even though the terms of the act are applicable to a city, yet rights under the bond herein involved may be enforced without regard to the statute; that the act by its terms demonstrates that the so-called right of action therein mentioned and the restrictions and limitations thereon as to the 60 days' notice, etc., are applicable solely to a true statutory bond complying strictly with the terms of the act; that the so-called statutory right of action, as such, arises only "when bond shall be executed as provided in this act"; that the legislature did not in any way purport to deal with, limit, abridge, restrict, or impose conditions precedent to the right of action on a bond that was not executed in compliance with or as provided for in this act; that without the existence or aid of the bond of contractors' act the bond involved herein was lawfully taken; that appellees as third party beneficiaries had the right to enforce the same and said act should not be so construed as to abrogate or impair that right since such construction is not absolutely required; citing *Alexander Lumber Co. v. Aetna Accident & Liability Co.*, 296 Ill. 500, in which case the

court in its opinion recognized the right of the Alexander Lumber Co. to sue, and said: "Having been made a beneficiary under the bond with the right to sue thereon there is privity of contract existing between it and the plaintiff in error."

Appellees also say that the bond involved in this suit is an entirely different bond than the one contemplated in the act, and is not a statutory bond. The statute in speaking of the conditions of a statutory bond, says, it "shall be conditioned for the payment of material used in such work and for all labor performed in such work." The condition of the bond in question is broader, and reads: "If said principal shall pay in full all persons and corporations who have furnished said principal labor or materials, under any nature of agreement, sale or employment, for use in the performance of said contract"; that this bond requires no proof that the material was actually used in and became a part of the job, but if the material was furnished the defendant, the Hecker-Moon Company, for use in the performance of the contract that is all that need be proven.

The statute provides that the statutory bond shall be conditioned for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise, while the instant bond is conditioned for the payment only of those "who have furnished said principal labor or material." And the first part of the bond in question reads, that it is for "the use and benefit of all persons or corporations who furnish labor or material to said principal for use in the performance of the contract." A statutory bond would be for the benefit of subcontractors and sub-subcontractors; but the instant bond by the language thereof is definitely limited to original contractors with the principal and clearly excludes subcontractors and more remote contractors who obviously

would not be furnishing materials to the principal but to the subcontractor with whom he dealt.

The statute gives laborers and materialmen rights regardless of those of the political subdivision, while the instant bond subordinates the rights of the laborers and materialmen to those of the city.

The statute requires suit in the name of the political subdivision, while the bond provides that the laborers and materialmen may sue in equity which necessarily means they may sue in their own names.

That the bond in question is not a statutory bond, but must be treated as an ordinary contract voluntarily entered into by the principal and a compensated surety.

Appellants say they have no controversy with the point made by appellees to the effect that if there had been no statute relating to the bonds of public contractors, the bond herein involved might be enforced as a common law obligation. There is certainly nothing to prevent the giving of such a bond, and having been voluntarily entered into, and not being contrary to law, there would be nothing to prevent its enforcement. Such, moreover, are the cases cited and relied on by appellees but in every one of such cases bonds were given under a situation as to which there was no applicable statute. They contain no provisions contrary to law, and they were therefore enforceable according to the terms thereof.

Appellants further contend that the bond is a substantial compliance with the statute and that the statute does not provide that it shall contain certain provisions, and none other, but that it shall be conditioned for the payment of material used in such work, and for all labor performed in such work, whether by subcontractors or otherwise; that the provisions of the statute are regarded as being incorporated in the bond; that the application of the statute is not defeated

by the fact that bonds contain provisions in excess of the requirement for the reason that the statute expressly contemplates the existence of such other conditions, the purpose of the statute being to afford adequate protection to subcontractors and also to provide for the protection of sureties; that the statute here involved covers the whole subject matter thereof and it provides a complete system of procedure. It applies to the making of all contracts for public work to be performed by the State or any "political subdivision" of the State, within the meaning of the statute, and this is clearly shown by the last proviso of section 2 of the act which directs that no action shall be brought on the bond provided for in said act until the expiration of 120 days after the performance of the last item of labor or the furnishing of the last item of materials "except in case where final settlement between the officer, board, bureau, or department of the municipal corporation and the contractor" shall have been made prior to the expiration of said period of 120 days, etc.

"Where a statute creates a new right or imposes a new duty or liability unknown to the common law, and at the same time gives a remedy for its enforcement, the remedy so prescribed is exclusive," citing Lewis' Sutherland on Statutory Construction (2nd Ed.), sec. 720.

From the allegation of the bill of complaint it is evident that appellees do not seek to recover on a statutory bond provided for under the act in relation to bonds of contractors entering into contracts for public construction.

The provisions of the bond upon which recovery is sought are in conflict with the provisions of that act. Under the act the statutory bond must provide for the payment of material used in such work and for all labor performed in such work whether by subcon-

tractors or otherwise, while the bond in question is for the use of the city and the use and benefit of all persons or corporations who furnish labor or material to the Hecker-Moon Company for use in the performance of said contract.

Under the provisions of the act laborers and materialmen's rights are protected regardless of those of the political subdivision. The bond in question provides that the rights under said bond of persons or corporations furnishing labor or material to the Hecker-Moon Company for use in the performance of said contract may be enforced by bill in equity, but all such rights shall be subordinate to the prior rights of the city to full indemnity and reimbursement as provided in the bond.

A reading of the bond will disclose that it was entered into primarily for the benefit of the city. It not only guaranteed the complete performance of the contract to the satisfaction of the city and the payment of all claims and demands including attorney's fees necessarily paid or incurred in enforcing performance of any of the obligations of the Hecker-Moon Company, but it also guaranteed to protect the city from all liability or expenses suffered or incurred by it by reason of any claim or claims of patent infringement and the protection of laborers and materialmen was a secondary consideration.

Appellants contend that when a statute creates a new right or imposes a new duty or liability unknown to the common law, and at the same time gives a remedy for its enforcement, the remedy so prescribed is exclusive.

That the statute here involved purports to cover the whole subject matter thereof and provides a complete system of procedure and applies to all contracts for public work to be performed by the State or any political subdivision thereof.

That because of such act the city was not authorized to accept any bond other than the one provided for under the act, and that the bond in question is therefore the statutory bond required and the remedy provided for in the act for its enforcement is exclusive and because appellees have not alleged in their bill a compliance with such statute that the bill fails to state a good cause of action.

It was not the intention of the legislature to put it in the power of a contractor for the performance of public works to enter into an obligation for the faithful performance of such contract that was other and different than that provided for in the act and when default is made and suit brought to enforce such obligation to say that the political subdivision had no authority to accept any obligation other than that provided for under the act and that therefore such obligation was a statutory obligation and because the terms of that act were not complied with in regard to the enforcement of the remedy therein provided that no action could be maintained for a recovery of damages for a breach of that obligation.

Appellants executed and delivered the bond in question chargeable with knowledge that its terms and conditions were not in keeping with the provisions of the act and are bound by the terms and conditions of the obligation so entered into by them and should not be permitted to plead in defense of this action that the same is a statutory bond and because the terms of the statute have not been complied with by appellees no recovery can be had on the bond. The circuit court of Sangamon county did not err in overruling the demurrer of appellants to the bill of complaint, and the judgment is therefore affirmed.

*Affirmed.*