COMPAÑÍA FERROVIARIA DE CIRCUNVALACIÓN DE PUERTO RICO, Plaintiff and Appellant, *v.* SECRETARY OF THE TREASURY, Defendant and Appellee.

No. 11422. Submitted April 4, 1956.—Decided June 25, 1958.

*James R. Beverley* and *Carmen B. Hernández* for appellant. *J. B. Fernández Badillo, Attorney General,* (*José Trías Monge, Ex-Attorney General* on the brief) and *J. C. Santiago Matos, Asssistant Attorney General,* for appellee.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

According to the facts stipulated in this case, the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, is a domestic corporation, organized in 1920 for the sole purpose of acquiring shares of Compañía de los Ferrocarriles de Puerto Rico, a Spanish company organized in 1888, and the shares of American Railroad Co. of Porto Rico, an American corporation organized in 1902 under the laws of the state of New York.

The appellant acquired 12,000 shares of Compañía de los Ferrocarriles de Puerto Rico which it holds in its possession, with the exception of 891 shares which it has been unable to obtain because they are in the hands of certain investors, but their value has been deposited in a bank in France at the disposal of the unknown stockholders. It also acquired 3,000 shares of stock issued by American Railroad Company of Porto Rico.

Compañía de los Ferrocarriles de Puerto Rico was the owner of the properties belonging to the railroad system; American Railroad Co. of Porto Rico operated the system and, except for the accounts receivable from Compañía de los Ferrocarriles de Puerto Rico for the operation of the railroad system, it does not own other properties. The appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, only owned the shares of stock of the other two companies and did not perform any function other than to lay down the rules for the administration of the railroad enterprise.

Compañía de los Ferrocarriles de Puerto Rico and American Railroad Co. of Porto Rico filed in the United States District Court for the District of Puerto Rico a reorganization proceeding under the Bankruptcy Act, by virtue of which both companies were reorganized on June 15, 1950 into a new company, Puerto Rico Railroad & Transport Company (Tr. Evid. 100). By virtue of that reorganization, the

debtor companies, Compañía de los Ferrocarriles de Puerto
Rico and American Railroad Co. of Porto Rico, were dis-
charged of all their debts and obligations; and by final
decree of June 15, 1950, all the rights and interests of the
stockholders and debtors not exempted in the Amended
Reorganization Plan of May 27, 1949 (Tr. Evid. 112–30)
were declared terminated (Tr. Evid. 102).

The capital stock of the appellant, Compañía Ferrovia-
ria de Circunvalación de Puerto Rico, consisted of 47,599
shares at a par value of $100. Since its organization in
1920 and until the taxable year 1948–49, the appellant has
paid property tax on the basis of the value it reported on its
returns, that is, at the rate of $15 per share. However, in
the year 1948–49 the appellant assessed those shares at $5
per share. The Secretary of the Treasury accepted the
appraisal of $15 per share, but was not satisfied with the
subsequent appraisal of $5 per share, and for the year
1948–49 and succeeding years he levied the tax on the basis
of the previous appraisal reported by the taxpayer.

The payments made by the appellant Compañía Ferro-
viaria de Circunvalación, involved in this case, were as
follows:

| "Receipt No. | Year | Semester | Taxes | Amount Paid | Date Paid |
|---|---|---|---|---|---|
| 86 | 1944–45 | 1 | $10,201.34 | $10,201.34 | 11/29/44 |
|  |  | 2 | 10,201.34 | 10,201.34 | 1/4/45 |
| 793 | 1945–46 | 1 & 2 | 19,546.62 | 19,546.62 | 5/21/46 |
| 105 | 1946–47 | 1 & 2 | 20,260.00 | 20,260.00 | 2/28/47 |
| 106 | 1947–48 | 1 & 2 | 20,474.30 | 20,474.30 | 8/25/47 |
| 279 | 1948–49 | 1 & 2 | 20,474.30 | 6,824.72 | 10/6/48 |
| 2,252 | 1949–50 | 1 & 2 | 22,685.82 | 7,561.94 | 7/26/50 |
| 1,568 | 1950–51 | 1 & 2 | 22,685.82 | 7,561.94 | 8/29/50" |

It seems that payment for taxable years 1948–49, 1949–50,
and 1950–51 was made for the purpose of taking an appeal
to the former Tax Court of Puerto Rico, since Act No. 235
of May 10, 1949 (Sess. Laws, p. 732), effective since July 1,

1949, required payment of that portion of the tax with which the taxpayer did not agree before he could appeal to that court.

Relying on the fact that Compañía de los Ferrocarriles de Puerto Rico enjoyed a legislative exemption—a fact which was virtually correct until June 15, 1950, when those companies were reorganized, as already noted—the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, "as holder of all the shares of stock issued by American Railroad Co. of Porto Rico and Compañía de los Ferrocarriles de Puerto Rico," applied for a refund of the property tax it had paid, which was disallowed by the trial court.

On appeal to this Court, the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, assigns the following errors: (1) the Superior Court of Puerto Rico, Division of Tax Matters, erred in holding that the tax exemption granted by law on the properties of Compañía de los Ferrocarriles de Puerto Rico did not cover the shares of stock owned by the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico; and (2) the Superior Court of Puerto Rico, Division of Tax Matters, erred in holding, with respect to the years 1949–50 and 1950–51, that the tax exemption granted by law to the properties of Compañía de los Ferrocarriles de Puerto Rico did not cover the foreign shares of stock owned by Compañía de los Ferrocarriles de Puerto Rico on which the Secretary of the Treasury of Puerto Rico levied a tax.

(1) The issue in this case is a tax exemption expressly granted by statute. We must therefore make some legislative history of the exemption in order to determine its content and scope. An Act was approved on February 4, 1902, "to exempt from taxation for a period of years certain railroads for the construction and operation of which franchises have been granted by the Executive Council of Porto Rico." This Act provides as follows:

"Section 1.—That the Compañía de los Ferrocarriles de Puerto Rico, *its successors and assigns,* are hereby exempted from all insular and municipal or local taxation of every name and nature for a period of twenty-five (25) years from the date of the acceptance by it of a certain ordinance passed by the executive council of Porto Rico on the twenty-sixth day of October, nineteen hundred and one, granting to it the right to extend its railroad lines to and between certain points in the Island of Porto Rico; said exemption from taxation to include any taxes heretofore levied and now due and to cover the railroad lines and property heretofore built and acquired by it as well as the railroad lines and property hereafter to be built and acquired by it.

"Section 2.—That the Port America Company, a corporation organized under the laws of the State of New Jersey, *and its successors and assigns,* are hereby exempted from all insular and local or municipal taxation whatsoever during the period of construction and for fifteen years thereafter, as provided in a certain ordinance passed by the Executive Council of Porto Rico on the twenty-eighth day of October, nineteen hundred and one, granting to the said company a franchise for the purpose of building and operating railroads in the Island of Porto Rico.

"Section 3.—Neither of the said companies shall enjoy or have the benefit of the exemption hereby granted until it has filed with the Governor of Porto Rico a formal agreement in writing, in which, for itself, *its successors and assigns,* it shall undertake for and during the period of exemption from taxation hereby granted to it, to convey free of charge, officers and members of any insular police or military force when said officers and members are in uniform and are in the performance of their duty, or when not in uniform but on some special service, they produce a written order for free transportation signed by the Governor or any of the heads of the general departments of the government." (Italics ours.)

Act No. 90 was approved on July 26, 1921 (Sess. Laws, p. 746), "Authorizing the Commissioner of the Interior to proceed to make a survey of and to construct the necessary railroad lines to join the present public-service lines in the eastern portion of Porto Rico; to acquire by purchase, lease or eminent domain proceedings any property necessary for

the purposes of this Act, and *to exempt from taxation any company constructing and operating any section or portion of the railroads specified in this Act, for the purpose of establishing a belt-line railroad.*" Section 9 of that Act provides as follows:

"The authorization hereby granted the Commissioner of the Interior to proceed to the construction of the railroad lines enumerated in Section 1 of this Act shall not bar the *construction and operation* of all or any of said railroad lines by any railroad company of a public character which may be willing and in condition to construct all or any of said lines or sections under a franchise granted by the Public Service Commission, provided said franchise is applied for before the Commissioner of the Interior shall have commenced the construction of the line or lines the construction of which is desired. . . . *Provided,* That any public-service company constructing and operating any of the lines specified in the aforesaid Section 1 of this Act, shall be exempt from the payment of taxes for ten years on the assessed valuation of said lines.

"Every public-service railroad company granted a franchise under the provisions of the preceding paragraph, shall be bound by the franchise itself, after the construction of the line or lines to which such franchise refers, to connect the completed section or sections with the lines of existing public-service companies, and to engage in a public freight and passenger transportation service over the section or sections so completed, in combination with the services of existing companies of a public character with whose lines they connect, and in accordance with such rules as the Public Service Commission may prescribe." (Italics ours except for the *provided.*)

On July 18, 1925 Act No. 49 was approved (Sess. Laws, p. 276), "To amend sections 1 and 9 of Act No. 90 . . . to extend tax exemption to all lines forming or to form part of the belt-line railroad, just as soon as any of said lines, in favor of a general and mutual service, makes the connection hereby required. . . ." Section 9 of that Act, as amended, provides as follows:

"The authorization hereby granted the Commissioner of the Interior to proceed to the construction of the railroad lines enumerated in section 1 of this Act shall not bar the construction and operation of all or any of said railroad lines by any railroad company of a public character which may be willing and in condition to construct all or any of said lines or sections under a franchise granted by the Public Service Commission, provided said franchise is applied for under the plan already established by the Public Service Commission, before the Commissioner of the Interior shall have commenced the construction of the line or lines the construction of which is desired. And to this end the Commissioner of the Interior is hereby empowered at the same time to take such steps as may be necessary to obtain the construction or operation by any public service company of all or any of the railroad sections or lines specified in section 1 hereof; *Provided,* That any public service railroad company forming or to form part of the belt-line railroad and which is at present exempt from the payment of taxes shall continue exempt from such taxes for ten years more, except the so-called Income Tax, just as soon as its respective lines shall have been connected with any of the east-end sections specified . . . *And provided, further,* That any public service railroad company *constructing* such line or lines as may be necessary to connect with another of the sections specified in section 1 of this Act, or with any belt-line whose present terminal is Carolina or Guayama, shall also be exempt from the aforesaid tax; *And provided, further,* That it shall be the duty of the public service companies and lines exempted from the payment of taxes under this section of this Act, to furnish transportation service *gratis* or free of charge (during the period of exemption) to officers and members of the Insular Police and of the military forces when in uniform and in the performance of official duties, as well as to prisoners and the children of the Asylums, to destitute persons, representatives of beneficient and charitable institutions, and to the insane on their way to the Insular Asylum for the Insane, and they shall also furnish to the Insular Government such other aid as it may demand because the public interest so requires."

Joint Resolution No. 1, approved May 7, 1927 (Sess. Laws, p. 606), in its pertinent part provides:

"That the Compañía de los Ferrocarriles de Puerto Rico, its *successors and assignees*, are hereby exempted from all insular, local and municipal taxation of whatever name and nature, except the amount that it should pay by virtue of the Workmen's Accident Compensation Act and the income tax, for a period of fifteen years from and after the date of the expiration of the period of exemption granted by the said Act, approved February 4, 1902; *Provided*, That this tax exemption shall end when the Public Service Commission declares, after making an investigation of the Compañía de los Ferrocarriles de Puerto Rico, that the capital of the said railroad company, actually invested in the business, shows a liquid profit of at least eight (8) per cent per annum.

"That said Compañía de los Ferrocarriles de Puerto Rico shall not enjoy the benefits of the exemption herein granted until it has filed with the Governor of Porto Rico a formal written agreement whereby it pledges in its own behalf, and in behalf of its *successors and assignees*, to transport free of charge, during the period of exemption from taxation hereby granted, the officers and members of the Insular Police and military forces . . . ." (Italics ours, except *Provided*.)

Act No. 435 was approved on May 14, 1951 (Sess. Laws, p. 1242). From its declaration of policy we copy the following:

" . . . considering that, both the Compañía de los Ferrocarriles de Puerto Rico as well as the American Railroad Company of Porto Rico are under receivership before the District Court of the United States for Puerto Rico, on petition of said companies through a request for reorganization under Chapter X of the Federal Bankruptcy Act, from August 1, 1947, as both were unable to continue operating due to financial difficulties; and considering that through a reorganization plan submitted by the receiver of said companies, already approved by the District Court of the United States for Puerto Rico by virtue of the final decree issued by said court on June 15, 1950, said receivership is about to end; and considering that, within the reorganization plan, a new corporation constituted by the railroad workers is contemplated, which will take over the property and equipment of said enterprise so as to continue the railroad operations from the viaduct in front of Camp

Buchanan, at Km. 13.370 of the general lines up to Guayama; and considering that for the purpose above set forth there has already been organized and incorporated under the laws of Puerto Rico the domestic corporation Puerto Rico Railroad and Transport Company for such purpose; and considering, further, that in order that the new employer-worker organization may be able to assume and continue the operations of the railroad, which is considered a factor of vital importance to the economy of The People of Puerto Rico, said organization be extended the tax exemption enjoyed by its predecessor, the above-mentioned railroad enterprise, since its foundation; and considering that the Compañía Ferroviaria de Circunvalación de Puerto Rico, a corporation also organized under the laws of Puerto Rico, is the entity which holds all the stock issued and outstanding of the American Railroad Company of Porto Rico and about ninety eight per cent of all the stock issued and outstanding of the Compañía de los Ferrocarriles de Puerto Rico; and considering that since the month of October 1950 the Puerto Rico Transport Authority is the holder of over ninety-nine per cent of the stock issued and outstanding of the said domestic corporation, Compañía Ferroviaria de Circunvalación de Puerto Rico, which stock, under the agreement entered into between the Puerto Rico Transport Authority and the Puerto Rico Railroad and Transport Company, are to be transferred to the latter corporation, which will ultimately have to bear the burden of the payment of the property taxes levied on January 1, 1951, on the Compañía Ferroviaria de Circunvalación de Puerto Rico for the stock of the American Railroad Company of Porto Rico and the Compañía de los Ferrocarriles de Puerto Rico, owned by said entity, it becomes, therefore, desirable that the Compañía Ferroviaria de Circunvalación de Puerto Rico be also exempted from the payment of taxes with respect to the stock of the American Railroad Company of Puerto Rico and Compañía de los Ferrocarriles de Puerto Rico which said company had or may have, *from the date of effectiveness of the exemption granted by this act, or during the effectiveness thereof."* (Italics ours.)

Section 4 of this Act provides:

"The tax exemption hereby granted to the Puerto Rico Railroad and Transport Company, *its assignees or successors,* is also extended, to the same extent and scope, without limitation, to its *predecessors,* the corporation Compañía de los Ferrocarri-

les de Puerto Rico and American Railroad Company of Porto Rico, up to the date on which they may cease in their business and operations and are dissolved, as well as to the Compañía Ferroviaria de Circunvalación de Puerto Rico, with respect to the stock of the American Railroad Company of Porto Rico and the Compañía de los Ferrocarriles de Puerto Rico, which stock they held on the date of the effectiveness of the exemption hereby granted and/or during the effectiveness thereof." (Italics ours.)

From an examination of the entire legislative history of this exemption, it is clear that the exemption was originally granted to two specific corporations: Compañía de los Ferrocarriles de Puerto Rico and American Railroad Company of Porto Rico; that thereafter and until January 1, 1951, the exempted company was Compañía de los Ferrocarriles de Puerto Rico, its *successors and assigns*. Tax exemptions, being true derogations of the sovereign authority, should not be extended beyond the exact and express requirements of the statute granting them. The interpretation must be *strictissimi juris: Covington & Lexington Turnpike Road Company v. Sanford,* 164 U. S. 578, 586–87, 41 L. Ed. 560, 563 (Harlan) (1896); *William G. Ford Jr. and Louis P. Levy v. Delta & Pine Land Company,* 164 U. S. 662, 666, 41 L. Ed. 590, 592 (Brewer) (1897). A tax exemption may be claimed only by the person or entity clearly comprised in the express terms of the statute granting it. *Picard v. The Tennessee & Railroad Co.,* 130 U. S. 637, 641–42 L. Ed. 1051, 1052–53 (Field) (1889); *Chesapeake and Ohio Railway Company v. Miller,* 114 U. S. 176, 185–86, 29 L. Ed. 121, 124 (Matthews) (1885); *Memphis and Little Rock Railroad Company v. Berry,* 112 U. S. 609, 615–18, 28 L. Ed. 837, 840 (Matthews) (1884); *Louisville and Nashville Railroad Company v. Palmes,* 109 U. S. 244, 249–51, 27 L. Ed. 922, 924 (Matthews) (1883); *Charles Morgan v. State of Louisiana,* 93 U. S. 217, 224, 23 L. Ed. 860–61 (Field) (1876).

It is alleged in the complaint that the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, is the *holder* of all the shares issued by the American Railroad Company of Porto Rico and Compañía de los Ferrocarriles de Puerto Rico (J. R. 1, 11, 16). In the stipulation of facts the appellant is described as a "merely investing" company (J. R. 41). It is also described as such in the brief for plaintiff-appellant (p. 13). In order to reach the conclusion that the appellant has the benefit of the property-tax exemption which Compañía de los Ferrocarriles de Puerto Rico enjoyed during the period covered by this claim, we would have to conclude that the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, is a "successor" or "assign" of Compañía de los Ferrocarriles de Puerto Rico.

The safest method for determining whether a corporation is the successor of another is not by determining whether there has been a merger or consolidation, but whether there has been a real and actual conveyance by the predecessor, not only of the business, but of the franchises, property, liabilities, and good will, to the successor. 15 Fletcher, *Cyclopedia of the Law of Private Corporations* 326, § 7203 (Callaghan and Company, 1938). Therefore, there is not the least doubt that a mere conveyance of the stock of a corporation to another does not make the latter a successor of the former.

We know that all the property represented by the stock of a corporation is distinct from the rest of the property of the corporation. *Klein* v. *Board of Tax Supervisors*, 282 U. S. 19, 23–24, 75 L. Ed. 140, 142 (Holmes) (1930); *Hawley* v. *Malden*, 232 U. S. 1, 9, 58 L. Ed. 477, 481 (Hughes) (1914); *Wright* v. *Georgia Railroad & Banking Co.*, 216 U. S. 420, 426–28, 54 L. Ed. 546, 553 (Lurton) (1910); *Home Sav. Bank* v. *Des Moines*, 205 U. S. 503, 510, 51 L. Ed. 901, 906 (Moody) (1907); *Farrington* v.

*Tennessee*, 95 U. S. 679, 686, 24 L. Ed. 558, 560 (Swayne) (1878).

The fact that a holding company owns all the stock of another corporation does not affect the separate and continuous existence of the latter. *State ex rel. City of Tacoma* v. *Tacoma Railway & Power Co.*, 112 Pac. 506, 508 (Chadwick) (1911). The same holding applies to the identity between both corporations, as to their officers and common stockholders. *Haskell* v. *McClintic-Marshall Co.*, 289 Fed. 405, 413 (Rudkin) (1923). See, also Frederick Dwight, *Capital and Capital Stock*, 16 Yale L. J. 161 *et seq.* (1907).

The same test would apply in determining whether a corporation is the assign of another. The mere conveyance of the stock would not make it an assignment, but rather the direct conveyance of the franchises, property, liabilities, and good will. There is no question that in this case the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, is not an assign of the exempted companies. It is well to recall that when Act No. 435 of May 14, 1951 was enacted, the Legislative Assembly of Puerto Rico expressly included the appellant, Compañía Ferroviaria de Circunvalación de Puerto Rico, among the exempted companies. This shows that it was not the previous legislative intent to exempt the appellant as a possible holder or possessor of the stock of the other two companies. Any subsequent legislation may be considered in construing properly the scope of the previous legislation. *Great Northern Railway Company* v. *United States*, 315 U. S. 262, 272–73, 277–78, 86 L. Ed. 836, 841, 844 (Murphy) (1942).

The scope of tax exemptions being a question of special statutes enacted for the purpose of granting exemptions, an examination of the general statutes on this point would not be worthwhile.

The judgment appealed from will be affirmed.

Mr. Justice Santana Becerra did not participate herein.